**SPRINGFIELD LOAN CO. v NATIONAL GUARANTEE & FINANCE CO., et**

Ohio Appeals, 2nd Dist, Greene Co.

No. 452.   Decided Dec. 17, 1939.

Miller & Finney, Xenia, for defendant-appellant.

Marshall & Marshall, Xenia, for plaintiff-appellee.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Greene County, Ohio.

The action originated as one in replevin, wherein the Springfield Loan Company, plaintiff, sought to recover possession of an automobile from the defendant, The National Guarantee & Finance Co.

Both companies had chattel mortgages on the automobile, and the sole question for determination is the priority of lien under their respective mortgages.

S. R. Young, a resident of Springfield, was a dealer in used cars, operating under the name of "Used Car Exchange". His place of business was upon an open lot within the City of Springfield. On May 15, 1937, S. R. Young negotiated for the purchase of

the automobile in question from the Ripley Motor Sales Company, of Urbana, Ohio. Simultaneous with the purchase, S. R. Young, on the said 15th day of May, 1937, for the purpose of financing the deal executed a note and chattel mortgage to the Springfield Loan Company on the automobile in question. The note and mortgage called for the payment of $375.00 in monthly installments. The mortgage was duly filed for record with the County Recorder of Clark County, Ohio, on the 18th day of May, 1937, at 2:45 P. M. The note and mortgage being signed as follows: "Used Car Exchange, S. R. Young." The mortgage was dated the 15th day of March instead of the 15th day of May. The trial court found this to be an error and permitted the correction.

One August C. Boster was attracted to the car on the sales lot and on the 19th day of August purchased the same, giving his note and chattel mortgage in the sum of $564.52 to the Used Car Exchange, the mortgage, of course, covering the subject matter of the action.

On the same day the Use Car Exchange, by S. R. Young, assigned the note and mortgage to the defendant, The National Guarantee & Finance Company. This chattel mortgage was filed for record on May 20, 1937, at 8:15 A. M.

The Boster note was likewise payable in installments. Three monthly installments were paid by Young to the plaintiff, the last payment being made on August 20, 1937. Boster made his monthly payments to the defendant, The National Guarantee & Finance Company, up to about the same time.

Some time in September Young skipped out and up to the time of the trial his whereabouts was unknown. This brought about an investigation by all interested parties. Boster, who testified that Young had represented to him that the car was unencumbered, then for the first time learned of the Springfield Loan Company's mortgage, and not caring to be further involved, declined to make further installment payments and turned the car over to the defendant, The National Guarantee & Finance Company.

On October 4, 1937, the replevin action was started in the Court of Common Pleas of Greene County, Ohio.

The petition and affidavit in replevin was in the usual from, with the allegation that the plaintiff claimed a right of possession of the automobile in question by reason of the mortgage lien given said plaintiff on the 15th day of May, 1937, by Used Car Exchange, S. R. Young, to secure a loan of Three Hundred Seventy-five ($375.00) dollars, from plaintiff to Used Car Exchange, S. R. Young.

Said mortgagors are in default and have been in default for payment as provided in said mortgage since on or about September 15, 1937, and under the terms of said mortgage, the plaintiff is entitled to possession of said automobile.

"Defendant wrongfully detained said property from plaintiff."

Defendant's answer contained two defenses, the first defense being a general denial, and the second defense pleads estoppel, seeking to invoke the principle of law announced in the case of **Hostetler v National Acceptance Co., 36 Oh Ap 141.** The syllabus in the reported case reads as follows:

"The holder of a chattel mortgage upon an automobile who permits the mortgagor, a retail automobile dealer, to place said automobile upon its salesroom floor for the purpose of sale to one who might be attracted thereby, will not be permitted to assert its mortgage against an innocent purchaser, who bought the car from said dealer in the ordinary retail way for value and without actual notice of said mortgage."

The second defense of defendant's answer is very long, but suffice it to say that it alleges each and every fact requisite to the invoking of the principle set out in the Hostetler case, supra.

To this second defense, counsel for plaintiff interposed a general demurrer,

which was submitted to a visiting judge and after hearing, sustained. We have been handed the written opinion of the trial judge sustaining the demurrer and thereby ascertain his analysis and reasoning. It was the opinion of the court that the claim of estoppel was not properly made in the second defense of the answer, for the reason that the averments of the answer that plaintiff expected said Young to sell said car would mean for cash, and the note and chattel mortgage for the balance would not be protected under the principle of estoppel. The court also made the observation that Boster himself under the authority stated would not be protected as against plaintiff beyond the actual cash payment he made on the car.

Following the sustaining of the motion, counsel for defendant took leave to file an amended answer, which was substantially the same as the first, with a few added averments, intended undoubtedly to better preserve its record.

Again plaintiff filed a general demurred to the answer, which upon hearing, was sustained. Thereafter August C. Boster, obtained leave to file an answer and intervening petition, the same being proffered and filed simultaneously with the application. The Boster intervening petition set forth practically the same averments as were contained in the second defense of the answer and amended answer of the National Guarantee & Finance Company.

Plaintiff interposed motion to strike the Boster intervening pleading from the files. This motion was submitted to a second visiting judge and was sustained on the ground that Boster was not a proper or necessary party for the reason that he had voluntarily surrendered whatever interest he may have had in said automobile.

Boster within time gave notice of appeal, and at a former term of this court the appeal was heard and the judgment of the lower court affirmed and the cause remanded for further proceedings according to law.

In the written opinion rendered by our court, an observation was made, which was purely dictum, that under the state of facts then presented to us, we knew of no reason why the defendant company would not have the same rights as would Boster, had he been the defendant. After the case was remanded, it came to trial on the merits before the resident judge, jury being waived. Over the objection of counsel for plaintiff, the trial court permitted the introduction of evidence on all the facts averred in defendant's second defense through its amended answer, the same as though the demurrer had not been sustained. We are not able to ascertain from the record the underlying reason in the court's mind for permitting the introduction of this testimony. It is possible that at the time the trial court differed with the reasoning of the visiting judge in sustaining the demurrer, or, as we suspect, the trial court desired the full and complete picture, so that he might consider the question in all its aspects when he was ready to make his decision.

Whatever the reason, the court finally decided the case in favor of the plaintiff and against the defendant, upon a reasoning at variance with the opinion of the visiting judge sustaining the demurrer.

We think it may be properly said that both courts arrived at the same conclusion upon different reasoning.

In the trial of the case plaintiff called as a witness Mr. John A. Ray, assistant manager of the Springfield Loan Company. According to the testimony of this witness, he closed the deal through which the note and mortgage were given by Young (Signed Used Car Exchange, S. R. Young). On cross-examination he was interrogated, over the objection of plaintiff, as to whether or not he knew that Mr. Young was intending to place the car on his used car lot for resale. Ray's answer in substance was that he did not know that, but on the contrary that Young had said to him that he was buying it for his personal use. Further cross-examination was made of Ray as to whether or not be had seen the bill of sale, and he answered that he had. The bill of

sale was produced and the witness's attention called to the notation in the printed form relative to sales tax, wherein it was marked "no tax account resale." Mr. Ray's answer was that he did not know whether he had seen that or not, but he supposed Mr. Young had inserted it for the purpose of avoiding the sales tax.

The trial court in its opinion made the following observation:

"The court, therefore, finds as a matter of fact that the Springfield Loan Company had no knowledge that this car was to be resold in the usual retail way by a retail dealer."

The court found the value of the property to be $286.96, and judgment was entered for the plaintiff, and the latter electing to receive in money the value of the property unlawfully obtained, it was adjudged that the plaintiff recover from the defendant the sum of $286.96, with interest thereon at the rate of 6% per annum from the date of filing the petition, to-wit, October 4, 1937, together with costs.

Following the overruling of motion for new trial, defendant duly filed notice of appeal on questions of law.

Defendant sets out on the second page of his brief, seven separately stated and numbered assignments of error. On page 9 of the brief, counsel classifies the assignments of error into four sections, as follows:

1. The lower court denied defendant the right to assert the defenses available to the innocent purchaser.

2. The proof adduced failed to establish a valid prior claim.

3. The court erred in reopening the case to admit oral testimony to alter the terms of the plaintiff's mortgage.

4. Interest was added to the judgment when not prayed for in the complaint.

We will consider the assignments of error under the above four headings.

## I. Defense of Innocent Purchaser

This assignment of error challenges the correctness of the judgment of the trial court in sustaining the demurrer to the second defense of defendant's amended answer. The original and possibly the leading case, as it applies to automobiles, is that of **Hostetler v The National Acceptance Company (1930), 36 Oh Ap 141.** The syllabus in this action has been quoted in full on a former page of this opinion. The principle was not entirely new, although no Ohio automobile cases had been previously reported.

In practice the Bar had come in frequent contact with the identical principle where chattel mortgages had been given on stock of merchandise where the store was operated as a going concern and regularly open for sales to the public. The merchandise stock was daily changing and probably at regular intervals being renewed with new supplies. In the course of a year the merchandise originally purchased would probably be practically all sold, new stock taking its place. Usually the chattel mortgage would make provision for such a situation and provide therein that the mortgage should cover the new stock taking the place of the old.

Whether or not the mortgage contained any special provisions, no one ever questioned the right of the public to purchase such merchandise without first examining the Recorder's records to see if there was a chattel mortgage thereon. It is apparent that the taker of a chattel mortgage who knowingly would permit the store to operate as a going concern and the public to purchase the merchandise in the usual way, would be estopped to assert any claim against such purchaser. Of course, the rule would be different where someone would attempt to buy up the entire stock of merchandise and fixtures to be operated at the same or another place under a new owner, because such a transaction was not in contemplation of the parties at the time the mortgage was taken.

Whether the principle of estoppel would be applied to merchandise sold

at retail in a small way, or to automobiles sold from the floor or parking lot of a dealer, the reason for the rule is the same. The holder of the mortgage in both instances knows that under such situation the commodity is being offered to the public for sale, and hence the rule of reason requires that they be estopped from asserting their claim to the property as against an innocent purchaser.

The principle as it applies to automobiles is stated by Day, J., in his opinion in the case of **The National Guarantee & Finance Co. v The Pfaff Motor Car Co. et, 124 Oh St 34-37:**

"The uderlying principle of the so-called floor plan doctrine is that for the protection of the buying public the owner has given implied authority to the agent to sell the car in question, and if the sale or transaction be one in the usual course of business the owner will be estopped to set up his title against the innocent purchaser who has invested his money, relying upon the apparent authority of the agent to sell, he having possession of the automobile in his showrooms and on the floor for sale."

There is a divergence of authorities in jurisdictions outside of Ohio. The case most frequently cited as contrary to the Ohio rule is that of the Utica Trust & Deposit Company v Decker, et al, 224 N. Y. 340, (155 N. E. 665). The leading case holding to an advanced view on the question of estoppel is that of Boice v Finance & Guaranty Corporation (Virigina Supreme Court of Appeals) 102 S. E. 591, 10 A. L. R. 654. Syllabus 1 reads as follows:

"A duly recorded chattel mortgage upon an automobile forming part of the stock of a retail dealer in such machines, to secure repayment of money lent to enable him to secure the machine for sale, is void as against a bona fide purchaser without notice."

In the notes in 10 A. L. R., 654, supra, we find the following:

"5. If the owner of personal property stands by and permits a seller who is a licensed dealer in such goods to hold himself out to the world as owner, and treat the goods as his own, place them with other similar goods of his own in a public storeroom, and offer

the same indiscriminately with his own to the public, he will be estopped by his conduct from asserting the ownership against a bona fide purchaser for value, without notice of his title. (See 24 R. C. L. 378)."

Also under Note 6:

"6. Knowingly permitting violation of a provision against sale in a chattel mortgage waives the stipulation. (See 5 R. C. L. 445)."

In the case of **The National Guaranty & Finance Company v Pfaff Motor Car Company, 124 Oh St 34,** supra, the Supreme Court while apparently recognizing in part at least the principle announced in the Virginia case, supra, yet under the facts involved in the case being decided, held that the rule could not be extended to a pledgee or a mortgagee in the absence of authority, express or implied, to so pledge or mortgage such property.

The case of **The Colonial Finance Co. v McCrate, 60 Oh Ap 68,** also found in the **Ohio Law Reporter,** under date of February 13, 1939, **page 307,** presents a case which the court of appeals distinguishes from the general rule by reason of a difference of facts. In this last case the Finance Company held a chattel mortgage, regular in all particulars as to execution and filing.

The mortgage contained an express provision against taking out of place of business for demonstration or making sale without first securing the written consent of the mortgagor. Under the admitted facts the mortgagee understood that the automobile in question would be on the floor with other

cars being offered for sale to the public. The mortgaged car was sold to another dealer at a wholesale price, and the court, while recognizing that Ohio was following the Virginia rule, yet determined that the purchasing dealer would not be protected since, in the opinion of the court, he was not within the class contemplated.

Having in mind the controlling Ohio rule and its scope, we now analyze the action of the visiting common pleas judge in sustaining the demurrer to the second defense of defendant's answer.

We are unable to agree with the court's reasoning that the express or implied authority to sell would mean for cash, and that a note and chattel mortgage for the balance would not be protected. As far as we are able to find, this theory is not supported by authorities in any jurisdiction, nor do we think it is founded on sound reason.

In logical order it must first be determined what right or title was acquired by Boster when he purchased the car. The fact that he paid only a small amount in cash, traded in an old car and gave a note and chattel mortgage for the balance, should not alter his status in the least. His payments, trade in and obligation of his note and chattel mortgage constituted full value. The fact that only a small part was cash, would make no difference. Whether he paid the amount on the day of the sale or the installment note, as it became due, should not alter the principle.

Of course, we can readily see under the averments of the second defense of the answer that if the Used Car Exchange, S. R. Young, was acting fraudulently, and had the note and chattel mortgage in his hands, there could be no claim of priority on his part over the chattel mortgage of the plaintiff company. This is true, because he executed the mortgage to the plaintiff company and therefore knew that it was unpaid and a prior lien. Under such a situation the plaintiff company would have had a higher equity than S.

R. Young and so much of the balance due from Boster as was necessary to meet their obligation could have been enforced.

However, under the principle of estoppel this would not have affected the title of Boster to the automobile which he purchased in good faith.

However, Young did not retain the note and mortgage, but on the same day that it was received by him and before due, and for a valuable consideration, he assigned both the note and mortgage to the defendant Finance Company. The question of law arises as to whether or not the Finance Company took the note and mortgage subject to or free of all infirmities.

Under the negotiable instrument law and the averments of the second defense, there can be no question that the Finance Company took the note before due, for a valuable consideration, without notice and thereby became a bona fide owner free from all infirmities.

There still remains the question as to the status of the mortgage. The case of **Bailey v Smith, 14 Oh St 396,** decision by Ranney, J., standing alone would lead to the conclusion that the negotiable instrument law would not apply to a mortgage and under the facts of that case the Supreme Court held that the real estate mortgage was subject to all equities. Under the facts of the reported case it was shown that the action was brought by the original maker of the note and mortgage to cancel the lien on the ground of fraud in the procuring of both note and mortgage. Fraud was shown, but the defendant, Smith, as endorsee, had obtained the note and mortgage for a valuable consideration, before due, and the trial court found in favor of Smith for the amount paid by him for the note and mortgage, with interest thereon and gave an order of sale of the premises under the mortgage. The fourth syllabus in the Supreme Court Reports, supra, reads as follows:

"4. The transfer of a negotiable promissory note, secured by mortgage on real estate, to a bona fide endorser, does not entitle the holder to foreclose the mortgage, when it appears that both note and mortgage were obtained by fraud."

This case has been reviewed numberless times by the courts of Ohio.

The Supreme Court of the United States, in the case of Carpenter v Longan, 16 Walling, 271 (21 L. Ed., 313), in a forcible opinion criticizes Baily v Smith, pointing out that the authorities generally hold that a mortgage is a mere accessory to a debt which it secures and is as impregnable to attack as the debt itself.

Since the above-referred to decision of the United States Supreme Court, the Ohio courts, while not reversing the case of Bailey v Smith, have distinguished it and limited the principle to the facts under consideration in that case.

Ashland Building & Loan Co. v Kerman, et, 23 Oh Ap 127; Leeper v Hunkin, et, 22 Oh Ap 204.

The case of the First National Bank of Wapakoneta v Brotherton, Trustee, et, 78 Oh St 162, settles the question so far as it applies to the facts in the instant case. The syllabus contains the notation that Baley v Smith, 14 Oh St 396, is distinguished. The opinion was by Shauck, C. J. On page 171 of the opinion he refers to the case of Bailey v Smith, and also to the opinion of the United States Supreme Court in the case of Carpenter v Longan, 16 Walling, 271. On page 172 the court points out the question under consideration by the court in Baily v Smith, and expressly limits the principle to the facts of that case. Then appears the following:

"In the present case, the question is whether against such bona fide holder there may be asserted a latent equity in favor of persons who are not parties to the mortgage and as to whom the record contains no disclosure whatever. An affirmative answer to that question derives no support whatever from Bailey v Smith. Notwithstanding all that was there said, cases of this character are determined by the familiar rule that a mortgage is an incident to a negotiable note which it secures, and is subject to no equity which may not be asserted against the holder of the note."

Applying the principle here announced to the instant case, we find that the plaintiff is not a party to the note and mortgage executed by Boster to Young, and hence following the latest decision of the Supreme Court, we must determine that the defendant Finance Company took not only the note but the mortgage free of all infirmities.

Of course, it will be understood that we are now considering the plaintiff's general demurrer to the second defense of defendant's amended answer.

The rights of the defendant Finance Company would be identical with those of Boster has he retained possession of the automobile, and similar action had been brought against him. The averments of the second defense of the amended answer properly set out the claim of estoppel, and being an affirmative defense, we hold that the court was in error in sustaining the demurrer thereto.

We might say at this point that there is a divergence of opinion as gleaned from an examination of the decisions by the courts in other jurisdictions on the question of estoppel being an affirmative defense. In some jurisdictions it is held that the question may be raised for the first time through the evidence under a general denial. In some instances it is held to apply to actions in replevin. See American Jurisprudence, title Estoppel, under subheading Replevin, page 841.

The majority rule, with which Ohio is included, is inclined to hold that estoppel must be pleaded.

Under the state of the record the question still remains as to whether or

not the action of the trial court in erroneously sustaining the demurrer to the second defense of defendant's amended answer was prejudicial.

This question presents itself by reason of the fact that the trial court in hearing the case on the merits permitted the defendant, over the objection of the plaintiff, to present, without limitation, all his evidence bearing on the question of estoppel. It is apparent that other than on the question of estoppel defendant had no defense for the reason that the plaintiff's mortgage was prior in time of execution and filing. Had defendant, on the sustaining of demurrer, permitted judgment to be entered against it and thereafter prosecuted appeal, we have no hesitation in saying that the judgment would have been reversed and the case remanded. Instead of so doing, defendant went to trial and was successful in having the court receive and consider all evidence relating to the defense of estoppel. Should it now be permitted to complain of an earlier ruling sustaining the demurrer?

Had the court overruled the demurrer, as in our judgment it should have done, no other or further evidence could have been presented than was permitted by the trial court on the hearing on the merits.

Having invoked the action of the court in this particular, it is our conclusion that defendant can not be heard to complain of an earlier action which in no wise obstructed the presentation of all their evidence under any defense.

One of the issues raised under the evidence and considered by the court was the question as to whether or not the plaintiff had knowledge that the Used Car Exchange, S. R. Young, was intending to or had placed the automobile in question upon his sale lot for sale to the general public. The manager of the plaintiff company, who executed the transaction with Young resulting in its receiving a note and chattel mortgage, testified on cross-examination that Young stated to him that he was buying the car for his own private use and further, that they had no knowledge that it was placed on the lot for resale. Counsel for defendant brought out and called special attention to evidence from which a contrary inference might arise.

The trial court in his opinion specifically found that the plaintiff did not have knowledge that the car was to be  sold in the usual retail way by a retail dealer. It is our judgment that the holding of the trial court is determinative of the questions raised under Assignment No. 1.

Following the above determination by the trial court, it went further and set forth in detail a further reason for its determination that the mortgage of the Springfield Loan Company was superior to that of the National Guarantee & Finance Company. We set out this part of the opinion of the court in full:

"If we take the position that the Springfield Loan Company did have knowledge that said car was to be sold by the said S. R. Young in the usual retail way, the court is still of the opinion that the mortgage of the Springfield Loan Company is superior to that of the National Guarantee & Finance Company, for the reason that The National Guarantee & Finance Company was not a purchaser of said car from a retail automobile dealer upon the sales room floor, as set out in the Hostetler case, but it was a purchaser of a note and mortgage given for the purchase price of the car in question. The defendant company is a finance company well informed and educated in all the matters of finance in reference to the purchase and sale of automobiles, and before they bought this mortgage from the Used Car Exchange they knew that there was a possibility that this car might have been been financed in the usual way, and they were charged with the duty of examining the record to see whether or not that was true, and if they had gone to that trouble they would have found the mortgage of the plaintiff on file. This

court is not of the opinion that they are subrogated to the rights of A. C. Boster, the purchaser, because they did not purchase this car from A. C. Boster. They purchased a note and a mortgage from the Used Car Exchange, and it could not be claimed by any stretch of the imagination that the Used Car Exchange mortgage in the hands of the Used Car Exchange would be superior to the mortgage of the plaintiff. The court feels that it is sustained on this proposition by the recent case of the **Colonial Finance Company v E. L. McCrate**, decided by the Court of Appeals of Putnam County on July 27, 1938, and reported in **Ohio Law Reporter** issue of Feb. 13, 1939, at **p. 307. (27 Abs 673)**. The appeal to the Supreme Court was dismissed, and is found in **134 Oh St 523.**

It is, therefore, the finding of the court that the mortgage of the Springfield Loan Company be and hereby is held to be superior to that of the National Guarantee & Finance Company, etc."

We have examined the case of **The Colonial Finance Company v. McCrate**, upon which the court relied, but we are unable to conclude that it is in point under the facts of the instant case. Furthermore, we find ourselves in disagreement with the trial court in the above quoted portion of his opinion.

We do not deem it necessary to do more than refer to earlier pages of this opinion wherein we analyze what we determine to be the status of the defendant Finance Company and other kindred questions.

## II. and III.

We will consider II and III together.

II. The proof adduced failed to establish a valid prior claim.

III. The court erred in reopening the case to admit oral testimony to alter the terms of the plaintiff's mortgage.

Under this heading counsel for the defendant Finance Company urge that the evidence discloses the invalidity of plaintiff's mortgage.

During plaintiff's introduction of its evidence, counsel, by consent, presented a photostatic copy of its original mortgage and thereafter had same introduced as an exhibit.

At the conclusion of plaintiff's case, defendant made a motion to dismiss on the ground that the mortgage purported to bear date of March 15 instead of May 15, and that the mortgage was therefore void for the reason that no consideration existed at that time for its execution, the note which it secured bearing date of May 15. Counsel for plaintiff stated to the court that he was taken by surprise and asked that the case be opened up for the introduction of further testimony. This application was granted. Evidence was then presented, over objection of defendant, that the word "March" was a mistake and that it should be May. The attending circumstances, together with the oral testimony, conclusively establish that the writing of the word March was an inadvertence, and that it should be May.

It is urged that the introduction of any evidence or reformation was unauthorized for the reason that the Used Car Exchange, S. R. Young, was not a party to the suit. We recognize the principle that where there is a mistake in substance, the rule contended for by defendant is well founded. In our judgment the question of date does not go to the substance, but where, as in the instant case, it is conclusively shown to be a clerical error, the correction should be permitted. In Jones' Commentaries on Evidence, Second Edition, Volume 3, Section 1530, under Note 8, we find the following:

"It may be shown that a note offered in evidence is the one secured by a mortgage though it vary in date from the description given in the mortgage."

We find no error under Specifications II and III.

## IV.

Interest was added to the judgment when not prayed for in the complaint.

At the conclusion of the case and before entry, plaintiff elected to take the value of the property and the journal entry incorporated therein such election. The court found no damages but allowed interest on the amount determined to be the value, at 6% from the date of bringing the action. Complaint is made that the court has no authority to allow interest.

**Secs. 12051 to 12074, GC,** govern replevin actions. No section mentions interest. There is a provision that upon recovery by plaintiff the jury may assess damages for the retention. We think that it would have been preferable for the court to follow the statute and instead of specifying interest have stated that the amount allowed would be damages. However, this was a mere matter of form, and under the substantial justice provisions of the Code, a judgment with interest may be affirmed.

We find the following in the case of **Cohen v Lonstin, 21 C. C. N. S. 501:**

"In an action of replevin where the plaintiff elects to take the value of the property as found by the jury he can also recover damages for its wrongful detention, and his recovery is limited to the value of the property thus found together with interest on that amount from the date of the wrongful detention."

Finding no prejudicial error, the judgment of the trial court will be affirmed and the cause remanded.

HORNBECK, PJ. & GEIGER, J., concur.