## COLONIAL FINANCE CO v McCRATE

Ohio Appeals, 3rd Dist, Putnam Co

No 317.   Decided July 27, 1938

Bruce Neilson, Lima, Unverferth & Unverferth, Ottawa, for appellant.

O. James Steele, Cole Grove, Walter S. Jackson, Lima, for appellee.

### OPINION

By GUERNSEY, PJ.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Putnam County, in an action pending therein wherein the appellant The Colonial Finance Company was plaintiff and the appellee E. L. McCrate was defendant.

The action is one for conversion of a Ford two door sedan, motor No. 2374789, the plaintiff claiming the title to the same as mortgagee under a chattel mortgage thereof executed and delivered to it by The Dixie Motor Company, and the defendant claiming title to the same as a purchaser for value from the Dixie Motor Company, subsequent to the time of the execution, delivery and recording of said chattel mortgage.

By stipulation of the parties the case was submitted to the Common Pleas Court without the intervention of a jury. The Common Pleas Court found on the issues joined in favor of defendant and motion for new trial having been overruled entered judgment on such finding against plaintiff dismissing its petition, and for costs, and it is this judgment from which this appeal is taken.

The appellant assigns error in a number of particulars but the assignments are all based on the contention argued in appellant's brief that said judgment is contrary to law in that under the law and evidence the title and right of possession of the automobile in controversy was in the plaintiff and said judgment should have been in its favor instead of against it.

Neither the appellant nor appellee has incorporated a statement of facts in its or his brief.

From the pleadings and the evidence contained in the bill of exceptions, with the inferences naturally deductible from the facts in evidence, the folowing material facts appear.

The Dixie Motor Company was at all the times pertinent to this case, an Ohio corporation, engaged in the garage business and sale of automobiles for which it was licensed as a dealer under the statutes of Ohio, with its principal place of business, garage, storage, display and sales room in the village of Bluffton in Allen County, Ohio.

On or about November 12, 1935, the Dixie Motor Company purchased the automobile in controversy from the Ford Motor Company; that at the time of the delivery of the automobile to it at its place of business at Bluffton it entered into a contract with the plaintiff, the Colonial Finance Company, an Ohio corporation with its principal place of business at Lima, Allen County, Ohio, engaged in the business of loaning money on chattel mortgage security, whereby said finance company loaned to it the sum of $470 for application on the purchase price of said automobile, and it in turn and as a part of the same transaction executed and delivered to said finance company its promissory note for said amount payable to the order of said finance company on demand, with interest at the rate of eight percent per annum, and at the same time and as a part of the same transaction, executed and delivered to said finance company its chattel mortgage of the

automobile to secure the payment of the indebtedness evidenced by said note.

Said chattel mortgage with affidavit indorsed thereon as prescribed by law was duly filed in the office of the recorder of Allen County, Ohio, on the 13th day of November, 1935.

That said chattel mortgage contained the following provisions, among others, to-wit:

"The mortgagor agrees to store said motor vehicles at his principal place of business or in a warehouse approved by the mortgagee and keep them safe and under shelter, and will not permit them to be damaged or depreciated and will upon demand deliver same in good order and unused to the mortgagee whether the mortgagor shall be in default under the conditions of this mortgage or not."

"The mortgagor may exhibit said motor vehicles and obtain offers to purchase the same but will not attempt to sell, assign, incumber or dispose of such motor vehicles or any interest therein without the written consent of the mortgagee. The mortgagor further agrees not to use or demonstrate said motor vehicles nor remove the same from said place of storage without having first obtained the written consent of the mortgagee."

The automobile in controversy, at the time of the execution and delivery of said chattel mortgage was on the floor of the display and sales room of the Dixie Motor Company, in Bluffton, Allen County, Ohio, where automobiles of a similar character were customarily held for display and sale by the motor company and continued to remain there until purchased by the defendant, as hereinafter mentioned.

There was no provision in said chattel mortgage other than the provision above quoted which in any way purported to confer authority on the Dixie Motor Company to sell or dispose of said automobile, and there is no evidence of any prior dealings between the parties, custom or acts of the parties to the mortgage from which it may be inferred or implied that the defendant McCrate was in any way authorized by the mortgagee finance company to sell or dispose of said automobile except as mentioned in said quoted provisions of said mortgage and except insofar as such authority may be inferred or implied from the facts herein stated.

Sometime after November 12th, and as shown by check of McCrate to the Motor

Company on November 16, 1935, the defendant E. L. McCrate, a dealer in automobiles, licensed under the statutes of Ohio, and dealing in Ford automobiles, with his residence and principal place of business in Columbus Grove, Putnam County, Ohio, without notice of the existence of the chattel mortgage aforesaid, except such constructive notice thereof as arose from the filing of the chattel mortgage in the recorder's office as hereinbefore mentioned, purchased said automobile which had remained on the floor of the display and sales room of the motor company from the time of the execution and delivery of said chattel mortgage, from said motor company for and at the price of $522.22 which represented the cost to the Dixie Motor Company of the automobile, as shown by freight receipt covering same, and also represented the wholesale price of the Ford Motor Company for the same.

There were not at any time on said automobile or in the premises or sales room of the motor company any marks, signs or placards indicating that the plaintiff finance company had any right or title to or mortgage on said automobile.

The automobile was delivered by the Dixie Motor Company to the defendant McCrate on November 16, 1935, the date of McCrate's check therefor, together with the freight receipt above mentioned. No bill of sale was executed or delivered by the Dixie Motor Company to McCrate for the automobile.

Immediately following the purchase of the automoible by McCrate and the delivery of the same to him as above mentioned, McCrate sold and delivered the same to a Mr. Gilger at Fremont, Ohio, executing and delivering to him what is known as a new car bill of sale therefor.

Some time later the Dixie Motor Company was placed in the hands of a receiver, and following this the plaintiff finance company for the first time learned of the sale of the automobile by the motor company to McCrate. The finance company then made demand on McCrate for the automobile or the value of the same not to exceed the amount due on its mortgage at the time of the demand, and the demand being refused it instituted this action for conversion.

The plaintiff has received no payments on the indebtedness secured by its said chattel mortgage and there is owing thereon the sum of $470 with interest thereon from November 12, 1935, at the rate of 8% per annum.

The legal question presented by this ap-

peal and the record is: Whether a chattel mortgagee in good faith and for value of a new automobile from a chattel mortgagor dealer in automobiles, whose mortgage is filed in the office of the recorder of the proper county, in accordance with law, and contains provisions permitting the mortgagor dealer to store said motor vehicle at his principal place of business and to exhibit said automobile and obtain offers to purchase the same but stipulating that the mortgagor will not attempt to sell, assign, incumber or dispose of said motor vehicle or any interest therein without the written consent of the mortgagee is estopped or precluded by the mere fact that it suffers or permits such automobile to remain in the possession of the mortgagor on the floor of a sales room where automobiles are customarily kept and displayed for sale by such mortgagor dealer, from asserting its mortgage against a dealer purchaser in good faith and for value from said mortgagor dealer, without notice other than constructive notice arising from the filing of such mortgage who purchases the same for resale by him subsequent to the execution and filing of said mortgage, at the wholesale price thereof and without receiving bill of sale therefor, while said automobile is being kept in the possession of the mortgagor on the floor of its sales room?

Sec 8560, GC, provides that a mortgage or conveyance intended to operate as a mortgage of goods and chattels which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against creditors of the mortgagor, subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, be forthwith deposited with the recorder of the county as provided in §8561, GC.

The inhibition of §8560 GC by its terms applying exclusively to cases where the statutory provisions as to the deposit of a mortgage or a copy thereof with the county recorder are not complied with, it is obvious that where a chattel mortgage has been deposited with the recorder of the county as provided in §8561, GC, as was done in the case at bar, it is valid as against creditors of the mortgagor, subsequent purchasers and mortgagees in good faith although not accompanied by an immediate delivery followed by an actual and continued change of possession of the things mortgaged.

There is, however, an exception to the rule which is generally recognized and this is that notwithstanding compliance with laws as to filing or recording, a mortgage of personal property, with possession and power of disposition reserved to the mortgagee, is fraudulent and void as against creditors of the mortgagor, subsequent purchasers and mortgagees in good faith, and if such power of disposition in the mortgagor does not appear upon the face of the mortgage, or is fairly to be inferred from its provisions, it may be shown by parol evidence of such understanding or agreement by the parties and may be proved by the conduct of the parties in relation to the subject matter of the mortgage and other circumstances, as in other cases. Freeman v Rawson, 5 Oh St 1; Bond & Investment Company v Long, 18 Oh Ap 235; Hostetter v The National Acceptance Company, 36 Oh Ap 140.

But where a chattel mortgage contains a provision against sale by the mortgagor, the burden rests upon a party claiming verbal authority by the mortgagee to sell, to prove such authority. Bond & Investment Company v Long, supra.

In the mortgage involved in the case at bar there is a provision against sale by the mortgagor without written consent of the mortgagee, and there is no evidence of any understanding or agreement by the parties to the contrary or of the conduct of the parties in relation to the subject matter of the mortgage or of other circumstances tending to prove a reservation of the power of sale in the mortgagor, except as the facts of the case stated in the question above set forth may tend to prove such reservation of the power of sale in the mortgagor.

We find no reported cases in Ohio directly involving the question of whether facts similar to the facts above referred to of themselves constitute proof of such reservation of power to sell but we find two opposing lines of authority on the question, in the decisions of courts of other states.

The one line of authorities of which the case of Utica Trust & Deposit Company v Decker, et, 224 N. Y. 340; 155 NE 665, is typical, hold that under chattel mortgage filing and recording statutes similar to §8560, GC, supra, chattel mortgages given by automobile dealers on automobiles, which were to be kept stored at their place of business for exhibition purposes, and no authority was given to mortgagors to deal with mortgaged property and mortgage had been filed, the mortgagee is not estopped to assert his mortgage claim as against purchasers for value without notice, on the

theory that possession of mortgaged property by the mortgagor being permissible under the recording law and no authority to sell the mortgaged property being conferred on the mortgagor under the terms of the mortgage no inference of fraud on the part of the parties to the mortgage or of authority of the mortgagor to sell the mortgaged property arises from the possession of the mortgaged property by the mortgagor in the mortgagor's sales room. The other line of authorities, of which the case of Boice v Finance & Guarantee Corporation, Virginia Supreme Court of Appeals, 102 SE 591; 10 A.L.R. 654, is typical, hold that a duly recorded chattel mortgage upon an automobile forming part of the stock of a retail dealer in such machines, to secure repayment of money lent in order to enable him to secure such machine for sale, is void as against a bona fide purchaser without notice, on the theory that notwithstanding the conditions of the mortgage and its record as against a person purchasing from the dealer in the usual and ordinary course of business at retail an inference of apparent authority in the dealer to sell arises from the facts mentioned estopping and precluding the mortgagee from asserting the mortgage against such person.

The latter line of authorities consist solely of cases in which the question arose between a mortgagee from a dealer and a person purchasing from the dealer in the usual and ordinary course of trade at retail receiving statutory new car bill of sale therefor, and we find no cases where the question arose between the mortgagee of a dealer and a dealer purchasing from him at wholesale without statutory new car bill of sale.

With certain variations and limitations the Supreme Court of Ohio in obiter dicta appearing in the opinion in the case of The National Guarantee & Finance Company v Pfaff Motor Cab Company, et, 124 Oh St page 34, has apparently approved the rule of law as laid down in the line of cases typified by the Boice case, supra.

This dicta assumes that under the laws of Ohio protection is given "an innocent purchaser for value in due course from a retail dealer" in automobiles of an automobile displayed upon the dealer's sales room floor for sale as against the owner of such automobile which under the laws of Ohio would include a mortgagee under a chattel mortgage from such dealer, and that the underlying principle of such rule which in the opinion is designated as the so-called floor plan doctrine, is that for the protection of the "buying public" the owner has given implied authority to the agent to sell the car in question; and if the "sale or transaction be one in usual course of business" the owner will be estopped to set up his title against an innocent purchaser who has invested his money relying upon the apparent authority of the agent to sell, he having possession of the automobile in his show room and on the floor for sale.

Assuming that this is a correct statement of the law the question arises as to the meaning of the phrases "innocent purchaser in due course from a retail dealer", "buying public", and "sale or transaction * * * in the usual course of business", as used in the dicta mentioned.

The first phrase clearly means an innocent purchaser in the usual course of business at retail from a retail dealer.

In interpreting the phrase "buying public" recourse must be had to certain statutory provisions with reference to the sale of automobiles.

In the provisions of §§6310-2 et seq. GC, a difference between the sale of a new car by a dealer to a dealer and by a dealer to a member of the buying public therein designated as "a general purchaser or user" is recognized and established, a sale of the first class being made without statutory new car bill of sale and a sale of the second class requiring a statutory new car bill of sale.

With this statutory distinction in mind it is obvious that the phrase "buying public" insofar as its application to new cars are concerned means members of the public who are general purchasers or users of new cars as distinguished from dealers in such cars.

"Sale or transaction * * * in the usual course of business" means a sale or transaction in the usual course of business in which the dealer is engaged, a sale or transaction at retail being in the usual course of business of a retail dealer.

Giving effect to the definitions of the phrases mentioned a sale by a retail dealer at wholesale to another retail dealer does not come within the protection of the rule laid down by the Supreme Court and the mortgagee of the seller of such automobile is not estopped or precluded from asserting his mortgage against the dealer purchaser of such automobile.

The legal question asked in the first part of this opinion must therefore be answered in the negative.

For the reasons mentioned under the conceded facts and undisputed evidence in the case at bar, including the evidence of the plaintiff as to the value of the automobile in controversy at the time he purchased the same being an amount fixed by the price paid by him and being more than the amount then owing on the mortgage indebtedness held by the plaintiff, the plaintiff was entitled to recover from the defendant the amount of such mortgage indebtedness with interest and the judgment of the Common Pleas Court is for this reason contrary to law and will be reversed, and this court rendering the judgment the Common Pleas Court should have rendered will enter final judgment in favor of plaintiff and against defendant for the sum of $470 with interest thereon from November 12th, 1935, at the rate of six percent per annum, and that plaintiff recover from the defendant all costs in the Common Pleas Court and this court herein.

CROW and KLINGER, JJ, concur.