## ASSOCIATES DISCOUNT CORP., Plaintiff-Appellee, v. MAIN STREET MOTORS INC., Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22311. Decided February 11, 1952.

M. A. Roemisch, Cleveland, for plaintiff-appellee.

Terrell, Williams & Salim, Philip Kasdan, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, PJ.

This appeal comes to this Court on questions of law from a judgment entered for plaintiff in Common Pleas Court of Cuyahoga County, Ohio.

The plaintiff is an Indiana corporation, authorized to do business in the State of Ohio and Michigan, and is in the automobile finance business. The defendant, an Ohio corporation, is engaged in the used car business in the City of Cleveland.

The defendant, through one of its employees, together with a Detroit agent, purchased from the Bud Ford Motor Sales, a partnership, dealing in automobiles in the City of Detroit, Michigan, two Chevrolet automobiles for the sum of Eighteen Hundred Dollars ($1800.00). The sale took place in Detroit, where, upon the completion of the transaction, the consideration was paid in full. The automobiles at the time of purchase were in Toledo, it being represented that they had been sent there to be disposed of in an auction. They had, however, not been sold.

The Bud Ford Motor Sales, when purchasing these cars, had received from the prior owners assignments of the certificates of title as provided by Michigan law. These certificates were assigned to defendant when this transaction was concluded, and the consideration paid. After Bud Ford Motor Sales purchased the two automobiles they mortgaged them to plaintiff as security for a loan totalling $2060.00. The mortgage was recorded as required by the laws of Michigan, with the Registrar of Deeds of Wayne County, Michigan. The lien of these mortgages was not noted on the certificates of title and when defendant made the purchase above described it was represented that there were no mortgage liens thereon.

Defendant took delivery of the automobiles in Toledo, Ohio, brought them to Cleveland where they were sold. The plaintiff, upon discovering that the defendant had disposed of said automobiles, brought this action in conversion.

The mortgages above noted provided in part that Bud Ford Motor Sales was to keep the automobiles at their place of business in Detroit and upon sale to hold the proceeds in trust and deliver the same to the mortgagee, and directed the purchasers to see that the proceeds were so applied.

Before selling the automobiles, defendant, with the use of

the Michigan certificates of title assigned to it in Detroit, procured certificates of title under Ohio law by the use of which title was transferred from defendant to the purchasers who are designated in the record as "unknown."

From a judgment in favor of plaintiff, for the balance due on the foregoing mortgages as damages for conversion of said automobiles, the defendant claims the following errors:

1. That the judgment is not sustained by sufficient evidence.

2. That the judgment is contrary to law.

3. For other errors of law appearing upon the face of the record.

The facts essential to determine the legal questions here presented are not in dispute. The contract by which defendant purchased the automobiles which it is claimed were converted, was made in Michigan so that for the most part, we must be guided by the law of that State. As shown by the evidence, the rules governing the recording of chattel mortgages are provided for by Sec. 566: 140 of Vol. 3 of the Compiled Laws of Michigan. The provisions of this statute make the filing of a chattel mortgage notice, to all persons who deal with the property mortgaged, of the conditions and terms thereof and the interest of the mortgagee in such property. There is no dispute but that the plaintiff recorded its mortgage upon the execution thereof by Bud Ford Motors Sales, as security for money loaned on the two automobiles with which we are here concerned, said automobiles being fully described in the mortgage.

There is no evidence as to whether under the law of Michigan a chattel mortgage passes the legal title of the property mortgaged to the mortgagee or an equitable lien is created. We must assume therefore, that the law in Michigan is the same as in this jurisdiction. **Mendelson v. Mendelson, 123 Oh St 11; 173 N. E. 615; Bobola v. Bobola, 68 Oh Ap 63; 33 N. E. 845.**

In Ohio, the mortgagee becomes the owner of the legal title of the property mortgaged. **Metropolitan Securities Co. v. Arlow, 107 Oh St 583.**

The act of Bud Ford Motor Sales in selling the two automobiles in total disregard of the rights and title of plaintiff therein, constituted a conversion of such property and for that reason, at the time of the sale to the defendant, said defendant became a convertor and, by virtue of the statute, charged with knowledge of plaintiff's mortgage interest. There is no evidence that defendant, through its agent and employee, had actual knowledge of the mortgage title of plaintiff, but if the seller committed an act of conversion in selling the automobile, unless for some reason the doctrine of estoppel

is applicable, the buyer is in no better position than the seller.

It is claimed by defendant that the plaintiff is estopped from enforcing its mortgage interest on the two automobiles purchased, or from claiming damages because of their conversion, because it permitted the mortgagor to retain possession of the automobiles for purposes of sale under what is known as "Floor Plan Financing." This claim cannot be supported. The defendant was a dealer in automobiles, not a purchaser at retail. The defendant, through its officers and agents, was fully informed on the subject of automobile sales agency floor plan financing. The defendant was also informed that the automobiles purchased were not at the seller's place of business, as is the general rule with regard to automobiles so mortgaged. Nor did the sale take place at the sales rooms of Bud Ford Motor Sales. Defendant's agents did not see the automobiles until after the purchase had been made. One other factor is undisputed in the evidence, and that is that the purchase price was $385.00 (or more than 15%) under the prevailing wholesale prices for automobiles like the ones purchased. All of these facts completely negative any claim of estoppel based on the claim that the mortgagee knew that the mortgagor would sell the automobiles in the regular course of his business and that innocent purchasers would be deceived thereby.

Plaintiff has put in evidence two Michigan cases in support of its claim of estoppel. Daas v. Contract Purchase Co. 318 Mich. 348; Hughes v. National Discount Corp. 326 Mich. 244. Both of these cases had to do with retail transactions when the purchasers were not informed about floor plan financing.

There being no Michigan law in point introduced into evidence, where the transaction was between dealers, we must again assume that the law there is the same as in Ohio. We have some support for this conclusion in the case of National Bond Investment Co. v. Union Investment Co. 260 Mich. 307, where a floor plan mortgagee was given priority for its mortgage over the claimed subsequent lien acquired by another finance company. This case, however, was not introduced into evidence.

In Ohio, the question has been decided by the cases of **National Guarantee & Finance Co. v. Pfaff Motor Car Co., 124 Oh St 34**; and **Colonial Finance Co. v. McCrate, 60 Oh Ap 68**. Paragraphs 1 and 2 of the syllabus of Pfaff Motor Sales Co. case, supra, provide:

"1. Where possession of an automobile for purpose of display in his show rooms is given a dealer, who afterwards mortgages such automobile to a finance company, such dealer

having no authority, express or implied, to pledge or mortgage such automobile, the owner and bailor of such automobile is not estopped to recover his property from the pledgee or mortgagee who may have taken possession thereof under his mortgage.

"2. The so-called floor plan rule, whereby an owner who has placed a car on the floor of a retail dealer's showroom for sale is estopped to deny the title of an innocent purchaser who has purchased from such dealer in the ordinary retail dealing, without knowledge of any conflicting claim, does not apply to a pledgee or mortgagee."

Likewise, paragraphs one and two of the McCrate case, supra, provide:

"1. An innocent purchaser for value from a retail dealer in automobiles, of an automobile displayed upon the dealer's salesroom floor for sale, is protected as against the owner of such automobile, which under the laws of Ohio would include a mortgagee upon a chattel mortgage from the dealer.

2. A sale by a retail dealer, at wholesale, to another retail dealer does not come within the protection of the above rule, and the mortgagee of such automobile is not estopped or precluded from asserting his mortgage against the dealer-purchaser of such automobile."

Defendant's claim of estoppel is not strengthened by the fact that the assigned Michigan certificate of title did not have noted thereon the lien of plaintiff. The assigned certificates of title were issued to the former owners and each was dated prior to the date Bud Ford Motor Sales took possession of the certificates and the automobiles. A lien created by a subsequent owner would, therefore, not appear thereon nor was it required by the law of Michigan that the mortgagee should cause such notation to be made.

Plaintiff introduced into evidence the statutory provisions of the law of Michigan dealing with certificates of title of automobiles. They are sections 256:102 and 256:103 Vol. 2 Compiled Laws of the State of Michigan for 1948. An examination of these sections discloses that the lien of a mortgage may be noted on a certificate of title, but failure to do so does not destroy the lien of the mortgage. The recording act, and the purposes therefor, were not changed by the Motor Vehicle Title Law, as is true in Ohio, and by Section 256:103 supra, a licensed dealer is exempt from the need of having the assigned certificate received on the purchase of a motor vehicle, reissued in the name of such dealer purchaser. The certificates of title here in question were assigned to the defendant by Bud Ford Motor Sales in full compliance with Michigan law

and under the law the defendant had no legal right to believe that all mortgage liens would be noted thereon.

We come now to the only remaining question which concerns the right of plaintiff to maintain this action in Ohio, where the plaintiff's lien was not noted on the certificate of title procured by this defendant after bringing the automobiles to Cleveland as required by §6290-4 GC. The defendant relies on the case of **Kelley Kar Co. v. Finkler, 155 Oh St 541.** The facts of the Finkler case, supra, are distinguishable from the case here considered, in a number of important respects; the most important of which is the fact that in that case the contract of purchase of the automobile was made in Ohio upon the representation of title evidenced by a certificate of title issued under the provisions of the Certificate of Title Act, §§6290-2 to 6290-20, inclusive, GC, while in the instant case, the defendant claims title to or damages for the conversion of the motor vehicles under a contract made in Detroit, Michigan, by the authority of which it took possession of the automobiles in Ohio before an Ohio certificate of title had been issued. The act of conversion in taking possession as owner, in absolute disregard of plaintiff's interests, preceded in point of time the creation of a certificate of title in Ohio. It must also be noted that in the instant case, the defendant by the affidavit of one of its officers represented that there was no lien on the motor vehicles for which the certificates of title were requested and induced the County Clerk to issue the certificates of title which failed to disclose the plaintiff's lien which certificate the defendant now seeks to use as a bar to the right of plaintiff to maintain this action, while in the Finkler case the fraudulent application was made by the person from whom the defendant purchased the motor vehicle. It seems strange that by the law of the Finkler case a certificate of title induced by fraud and perjury is given absolute verity and permitted to destroy the lien of a valid mortgage made in a sister state, in spite of the fact that the courts of this state have recognized and enforced obligations of that character, since the case of **Kanaga v. Taylor, 7 Oh St 134,** decided in 1858, and in the face of the holding of the Supreme Court in **Finance Co. v. Munday, 137 Oh St 504,** in which the court said, in speaking of the effect of fraud in securing the issuance of a certificate of title under §6290-2 to 6290-22 GC, inclusive:

"Besides the certificate of title being issued upon the false representations of Munday and/or North Side Auto Sales was void ab initio. The very purpose of the law is to protect ownership against fraud. * * *.

"Therefore, the certificate of title introduced in evidence in behalf of appellant (plaintiff below) is clearly invalid and the appellant has no right to rely upon the same."

However, the rule of the Finkler case, supra, is not applicable to the instant case because of the distinguishing facts herein set forth. The plaintiff's right to seek redress on a cause of action founded on the conduct of the parties prior in point of time to the defendant's application for a certificate of title under the Ohio law, certainly cannot be destroyed by the act of defendant in thereafter causing a certificate of title to be issued without noting plaintiff's mortgage.

For the foregoing reasons we find that the errors complained of by the appellant are not sustained and the judgment is therefore affirmed. Exc.

HURD, J, THOMPSON, J, concur.