**STEMMONS, Inc., a Corporation,**
**Plaintiff in Error,**

v.

**UNIVERSAL C. I. T. CREDIT CORPORA-**
**TION, a Corporation, Defendant**
**in Error.**

**No. 36861.**

Supreme Court of Oklahoma.

July 10, 1956.

Rehearing Denied Sept. 11, 1956.

Valjean Biddison, Floyd L. Rheam, Tulsa, for plaintiff in error.

Robert O. Bailey, McClelland, Bailey & McClelland, Oklahoma City, for defendant in error.

CORN, Justice.

The question presented for determination by this appeal evolved from the factual matters hereafter related, and as to which there is no dispute.

On December 15, 1953, F. A. McBee, doing business as McBee Motor Company, was an authorized Dodge-Plymouth automobile dealer in Greenfield, Missouri. Upon that date, and at all times hereafter referred to, Lester Hollis was a licensed used car dealer in Springfield, Missouri. At this same time Stemmons, Inc., was a licensed used car dealer in Tulsa, Oklahoma, and Cliff Wilson was a licensed used car dealer in Midwest City, Oklahoma. The plaintiff had loaned McBee $1,845.25, secured by a recorded "floor plan" chattel mortgage on a new Plymouth automobile which McBee was offering for sale.

On December 22, 1953, McBee sold this automobile to Hollis, receiving $1,500 cash and a 1949 Plymouth automobile, giving him a bill of sale and a signed, blank application for a Missouri certificate of title which showed the car had been purchased for resale only. Hollis applied for and received a certificate of title under his dealer's permit. Thereafter Hollis sold this vehicle to Stemmons, Incorporated, which concern negotiated a sale to Cliff Wilson, who had possession when plaintiff brought this action.

Plaintiff sued Wilson to replevin this automobile, alleging the loan of money secured by a chattel mortgage thereon, the mortgagor's default in the terms of the mortgage, the right of ownership and a special lien, and the right to immediate possession. Writ of replevin issued and

Wilson surrendered possession of the automobile.

Stemmons, Incorporated, then moved for leave to intervene and to be substituted as party defendant, claiming ownership and right of possession of this car. Having been granted leave to intervene defendant's petition alleged purchase of the car from Hollis in the ordinary course of trade, and sale of same to Wilson who, upon replevin thereof, had called upon defendant for reimbursement under the warranty of title; that defendant had purchased this car in the ordinary course of trade from an authorized car dealer (Hollis Motor Co.) and for this reason defendant had taken title free of lien held by plaintiff. Defendant asked for damages for wrongful replevin, return of the vehicle or value thereof. Plaintiff replied to defendant's answer and plea in intervention by general denial.

At the trial the parties stipulated $2,400 was the fair market value of the car. Certain matters were stipulated to at the trial and the evidence introduced was in the form of depositions of Lester Hollis, and his son who had assisted in the sale to defendant, together with exhibits disclosing the nature of the title transaction. By agreement the car was sold at public auction and the proceeds of the sale deposited with the court clerk, pending determination of this appeal.

After hearing the matter the trial court rendered judgment for plaintiff, upon the theory the ultimate purchaser was not protected from the lien granted the mortgagee by statute because the sale, under which the mortgagor surrendered possession of the mortgaged vehicle, was not a sale in the ordinary course of business.

At this point it should be noted that no questions relating to notice, consideration, or good faith are of concern herein. The trial court recognized this as a case of first impression in this jurisdiction, but stated that in his opinion it was such a case as the statute was designed to prevent. The appeal from the trial court's judgment is based squarely upon the proposition that the court erred in holding that the sale (by which the mortgagor surrendered possession of the car to Hollis) was not a sale in the ordinary course of trade.

In 1947 the Legislature enacted certain new chattel mortgage statutes, dealing with the mortgage or pledge of stocks of goods, which statutes now appear as 46 O.S.1951 §§ 91–94, inclusive. Section 91 provides for the giving of a mortgage upon all, or a portion of a stock of goods. Sections 92 and 93 then provide:

"Sec. 92. Provisions for release— Sales in course of trade.—No such mortgage or pledge shall be deemed to be fraudulent or void as to creditors of the mortgagor or pledgor, because of any agreement between the parties thereto for the release from time to time of any of the goods from the lien thereof upon such terms as may be agreed upon, or permitting the mortgagor to sell the goods in the usual course of trade upon such terms and conditions as to the use and disposition of the proceeds of such sale as may be agreed upon; and the mortgagor in such event in case of any such sale shall promptly account and pay over to the mortgagee for application upon the debt secured all or such part of the proceeds of any such sale as may be required by such agreement to be paid to the mortgagee and shall be deemed and conclusively held to be the trustee of the funds received upon such sale to such extent for the benefit of the mortgagee. Laws 1947, p. 304, § 2.

"Sec. 93. Freedom from lien of goods sold.—All goods, wares, and merchandise sold in the ordinary course of trade shall be free of the lien of such mortgage or pledge in the hands of the purchaser thereof. Laws 1947, p. 304, § 3."

In view of the trial court's holding we are required to determine whether, in view of the language used, the Legislature intended to protect the mortgagee's lien upon

the property, possession of which is retained by the mortgagor who offers same for sale, in all instances except where the mortgagor sells at retail.

The trial court's attention was directed to decisions from other jurisdictions where this question has been considered. And, in their appeal briefs, the parties cite and rely upon what appears to be the latest decided cases upholding each party's theory. Although not controlling, there are instances when the reasoning upon which a decision from another court is based may be of great assistance and particularly persuasive. To aid in consideration of this matter we deem it advisable at this point to consider the cases principally relied upon by the parties as sustaining their respective positions.

Plaintiff relies upon two decisions from the Ohio Court of Appeals, to-wit: Colonial Finance Co. v. McCrate, 60 Ohio App. 68, 19 N.E.2d 527, 531, and Associates Discount Corp. v. Main Street Motors, Inc., Ohio App., 113 N.E.2d 734. In the McCrate case the Ohio court pointed out that statutes of that state recognized a difference between a sale and purchase between two automobile dealers, and a sale by a dealer to a member of the buying public designated as " 'a general purchaser or user.' " Such distinction was that in the first instance no statutory new car bill of sale was required, whereas in the latter case there was the requirement that a statutory new car bill of sale be issued. Based upon this statutory distinction, the Ohio court construed the phrase "buying public" to mean members of the general public who were purchasers and users of cars; as distinguished from dealers in cars. The court concluded that a sale in the usual course of business could only be a sale at retail by a dealer in the usual course of his business as a retail dealer. Upon such reasoning it was held that a retail dealer's sale at wholesale to another retail dealer did not protect the purchaser, and the mortgagee was not precluded from asserting the superiority of his lien against such a purchaser.

In Associate Discount Corp. v. Main Street Motors, Inc., supra, the above mentioned rule was applied to a similar transaction between automobile dealers, which had been consummated in the State of Michigan, although the purchaser had disposed of the cars in Ohio.

Contrary to the rule urged by plaintiff, and accepted by the trial court, defendant asserts that the applicable rule is expressed in the following decisions: Colonial Finance Co. v. De Benigno, 125 Conn. 626, 7 A.2d 841; General Finance Corp. v. Krause Motor Sales, 302 Ill.App. 210, 23 N.E.2d 781; Cunningham v. G. F. C. Corp., 35 Tenn.App. 237, 244 S.W.2d 181; General Credit Corp. v. First Natl. Bank of Cody, Wyo., 283 P.2d 1009; Commercial Discount Co. v. Mehne, 42 Cal.App.2d 220, 108 P.2d 735; which case was cited and followed in People's Finance & Thrift Co. of Visalia v. Bowman, 58 Cal.App. 2d 729, 137 P.2d 729. It is worthy of note that of the courts which decided these cases, four of them (California, Connecticut, Illinois and Wyoming) considered the problem in the light of the provisions of the Uniform Trust Receipts Act, which has been enacted into law by these states. See 9A, U.L.A. 274. It is of especial interest that under the provisions of the Uniform Act the very term and phraseology which gives rise to the instant question are carefully defined. Uniform Trust Receipts Act, Sec. 1, 9A, U.L.A.

In the De Benigno case, supra, the Connecticut court refused to follow the rule announced by the Ohio court, and pointed out that it was based upon statutory provisions, which distinguished between sales by a dealer to a dealer and sales by a dealer to the buying public, which caused the Ohio case to be of no aid in defining the phrase " 'Buyer in the ordinary course of trade.' " The Connecticut court specifically pointed out that the state's original Trust Receipt statute (1935) had limited protection of the statute to retail purchasers, whereas the statute which the court had under consideration contained no such limitation.

Since the question here presented must be decided upon the basis of the interpretation to be placed upon the language contained in our statute, supra, it is unnecessary to review further the above cited cases, or to discuss those features which plaintiff contends distinguishes such holdings from the Ohio rule, McCrate case, supra. Neither shall we review numerous other cases cited by the parties, including decisions from this court, since these cases generally concern a sale at retail, and are of no value in determining the question involved. Those cases which hold that a sale from one dealer to another is a sale in the ordinary course of business are from states which have enacted the Uniform Trust Receipts Act.

We do consider it of importance that, by the provisions of the Uniform Act, the statutory phraseology which provides the basis of the present question has been eliminated by succinct definition of the particular terms. Briefly stated, by definition a "buyer in the ordinary course of trade" is one to whom goods are sold for new value, and who acts in good faith and without knowledge of limitation on the liberty of the trustee (mortgagee) to sell; "purchase" is a taking by a sale, and a "purchaser" is a party who takes by purchase; "value" is any consideration sufficient to support a simple contract.

Our own statutes, supra, referred to by plaintiff as a "floor plan" act, contain no definition of terms. Neither did the bill as enacted, S.B.167–S.L.1947, Tit. 46, Chapter 3, p. 304, purport to define any of the terms used therein, nor by specific language attempt to limit operation of the statute to any particular type or class of sales by the mortgagee.

When considering the construction to be given a statute, the primary consideration is to ascertain the legislative intent, and this must be determined from the language used. And, the general rule is that nothing may be read into a statute which was not within the manifest intention of the legislature as gathered from the language of the act. In 50 Am.Jur., Statutes, Sec. 228, it is said:

"* * * It is not within the province of a court, in the course of construction of a statute, to make or supervise legislation. A statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten, or given a construction of which its words are not susceptible, or which is repugnant to its terms. The terms of the statute may not be disregarded. To depart from the meaning expressed by the words of a statute, is to alter it, and is not construction, but legislation."

And, section 230 of the same text states the following rule:

"In the construction of a statute, the general rule is that the court may write no limitations therein. As variously expressed, the statute may not be restricted, constricted, qualified, narrowed, or abridged. Hence, general words are to have a general operation where the manifest intention of the legislature affords no ground for qualifying or restraining them."

The legislative authority to enact the present chattel mortgage statute in such form as it chose cannot be questioned. In absence of an attempt to define any of the terms used in the statutes in question, it must be presumed the legislature considered it unnecessary to define particular words and phrases, and that it was intended only that same bear their usual and commonly accepted meaning. It is a legal presumption that the legislature expressed its intention in the statute as enacted, and that it intended what it expressed and nothing more. McCarter v. State ex rel. Pitman, 82 Okl. 78, 198 P. 303.

Two practical considerations add substance to such reasoning. First, it is

common knowledge that few articles of trade connected with daily living pass from person to person in the everyday market as readily as the automobile. It is sold, transferred, given away, or pledged as collateral with little identification other than casual examination of the exterior, the word of the seller or mortgagor in possession that the vehicle belongs to him, and the assignment, even in blank, of an ordinary certificate which permits the automobile to move freely on the open market in much the same fashion as a negotiable instrument. Second, most particularly since the end of the last war, it is known and recognized that automobile dealers generally transfer, trade and sell automobiles among themselves as a matter of convenience. Not only is this the common practice between so-called authorized dealers, but the practice is even more prevalent between authorized dealers and the licensed used car dealers. And, whether such transactions are for convenience in reducing a stock of merchandise, by way of financial retrenchment, or because of the opportunity for profit, the one fact remains that in every instance there was a complete sale to a purchaser who gave value to a dealer, who made advantageous disposition of a unit of merchandise which he handled in the ordinary course or conduct of his business. The situation disclosed by this appeal epitomizes the matters mentioned above.

We are of the opinion that the language of the statute, supra, was intended to encompass all transactions between persons who, in their ordinary business dealings, effected a sale and purchase for a consideration sufficient to support a simple contract. Had the Legislature intended that transactions in the ordinary course of trade were to be limited to sales at retail to the general public, such requirement could have been expressed most clearly by the inclusion of the simplest phraseology. The failure to include such limitation in the statute, supra, impels the conclusion that the Legislature, by enact-

ment of the statute under consideration, intended no such result.

Judgment reversed.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON, HALLEY, BLACKBIRD, and JACKSON, JJ., concur.