SELECTED INVESTMENTS CORPORA-
TION, a corporation, Plaintiff in
Error,

v.

The SECURITY BANK & TRUST COM-
PANY, a corporation, Defendant
in Error.

No. 37490.

Supreme Court of Oklahoma.

July 8, 1958.

Rehearing Denied Sept. 30, 1958.

John W. Tyree, Arthur L. Cavanagh, Lawton, for plaintiff in error.

Fred R. Harris, Bledsoe, Nicklas & Chrisman, Lawton, for defendant in error.

HALLEY, Justice.

This is an appeal by Selected Investments Corporation, a corporation, hereafter referred to as Selected, from a judgment of the Superior Court of Comanche County, rendered in an action brought by The Security Bank & Trust Company, Lawton, Okla., referred to here as Bank, for the alleged conversion of personal property, be-

ing two automobiles on which the Bank held a chattel mortgage, often referred to as "floor-plan" mortgage, because the Bank, as mortgagee, permitted the cars so mortgaged to be offered for sale to the public in the ordinary course of trade. T. A. Bomar, d/b/a Victory Auto Sales, became a used car dealer in 1952 and thereafter the Bank loaned him money secured by mortgages on his cars and also bought his conditional sales contracts.

In May or June, 1953, the Bank discontinued the purchase of Bomar's conditional sales contracts, so he began to sell such contracts to Selected.

In September, 1954, Bomar gave the Bank a "floor-plan" mortgage upon a 1953 Pontiac and a 1951 Ford automobile. This mortgage was filed by the Bank September 16, 1954. October 6, 1954, Bomar sold the Ford and on October 7th, he sold the Pontiac, and assigned the conditional sales contracts covering the cars to Selected, to whom he was indebted, and that corporation applied the amount that it agreed to pay for the conditional sales contracts covering the two cars, upon the indebtedness due it by Bomar. The title to these cars was retained in the seller until the purchase price was paid. The note covering both cars and payable to the Bank was for the sum of $1,710. The mortgage given to the Bank simply allowed the mortgagor, Bomar, to place the cars in his stock and offer them for sale to the public in the ordinary course of trade and this was agreed to by the mortgagee Bank. The Ford car was sold by Bomar to Gene Kelley and the Pontiac to Lucius C. Malone, who were made parties defendant, along with Bomar and Selected. Default was made in paying the purchase price of both cars. Both were repossessed by Selected prior to· trial.

Selected demurred to the petition of the Bank, and when overruled, filed an answer, and admitted that it took assignments from Bomar of conditional sales contracts, having actual knowledge of the chattel mortgage in favor of the Bank, and that the Bank had actual knowledge that it was, and had for some time, purchased many cars from Bomar which were covered by conditional sales contracts from Bomar, acting in good faith and in the regular course of business. It further plead that the Bank had waived its mortgage lien on the cars and was estopped to deny its title to the automobiles. The court rendered judgment for the Bank for possession of the cars, or their value, at the time of conversion.

For a proper determination of this case we must see how far Section 91 to 94, 46. O.S.1951, apply. These sections were enacted in 1947 as shown by Oklahoma Session Laws 1947, p. 304. The title of that Act is as follows:

"An Act relating to mortgages or pledges of all or any portion of a stock of goods, wares, and merchandise in certain cases, providing that in such cases the same may be validly mortgaged or pledged, and transferred pursuant thereto, and disposed of to satisfy the debt secured, without prior notice to creditors of the mortgagor or pledgor and without being deemed fraudulent as to them; providing that no such mortgage or pledge shall be deemed fraudulent or void because of any agreement permitting the release of goods therefrom from time to time or permitting the mortgagor to sell the same in the usual course of business and dispose of the proceeds of such· sale as may be agreed upon and prescribing the liability of such mortgagor for such proceeds; providing that all' mortgages and other contract liens. contemplating continuance of possession by the owner of any goods, wares. or merchandise exposed for sale at retail in parcels, except in the cases permitted by this Act shall be deemed fraudulent and void; repealing all Acts or parts of Acts in conflict herewith; and declaring an emergency. [Laws 1947, p. 304.]"

Clearly this Act was intended to give protection to a mortgagee and yet permit the·

sale of property covered by the mortgage in the ordinary course of trade.

If the transaction between Bomar and the two original purchasers, Kelley and Malone, had been an outright sale there would be no question but that under Section 93, which is:

"All goods, wares, and merchandise sold in the ordinary course of trade shall be free of the lien of such mortgage or pledge in the hands of the purchaser thereof.",

the buyers would have had a title free and clear of the mortgage to the Bank. Bank of Meeker v. Hair, Okl., 261 P.2d 870. Since the purchaser had bought under conditional sales contracts they would have no title until they had made all the payments required under such contract. Mondie v. General Motors Acceptance Corp., 178 Okl. 584, 63 P.2d 708. This they did not do.

When Selected purchased the conditional sales contracts on the two cars involved here it took an assignment of the contracts which is worded as follows:

"For value received, the undersigned hereby sells, assigns, and transfers to Selected Investments Corp., 312 N. W. First Street, Oklahoma City, Okla., its successors or assigns (with recourse—without recourse), all right, title and interest in and to this agreement, the amounts payable thereunder, and the property therein described.

"The undersigned warrants that this agreement was executed in connection with the sale and delivery to and the acceptance by the buyer named therein of the articles described, and that there is now owing thereon the amounts as set forth therein, the payment of which in accordance with all the terms and conditions herein mentioned is hereby guaranteed by the undersigned together with interest, attorney fees, court costs or other expenses in connection therewith."

The question for us to decide is whether it was a purchaser in the ordinary course of trade. We are of the opinion that they were not. Our reason for thinking so is that Selected was not in the business of buying and selling automobiles nor did it acquire these cars for its own use. It was simply a purchaser of conditional sales contracts in the capacity of a finance company. It knew of the Bank's mortgage and is presumed to be cognizant of Section 92, 46 O.S.1951, by which Bomar was a trustee of the funds for the Bank which he received for the automobiles and it was his duty to account to the Bank for this money he received from Selected for the conditional sales contracts. The Legislature did not intend by this Act of 1947 to put any one ahead of the first mortgagee except actual purchasers in the ordinary course of trade. Here Selected simply stepped into the shoes of Bomar as to both his rights and his liabilities as the title holder of the two cars in question. See 78 C.J.S. Sales § 641, sub. sec. b.

Selected contends that the case of Stemmons, Inc., v. Universal C.I.T. Credit Corp., Okl., 301 P.2d 212, is an authority which requires a judgment in its favor. We do not agree. That case held that a sale to an authorized car dealer of a new car to a licensed used car dealer for resale, buyer having no knowledge of seller's financing arrangements or finance company's chattel mortgage on vehicle, constituted a sale in the ordinary course of trade. In that case the possession of an automobile changed hands. In the case at bar it did not. By the assignment of the conditional sales contract bare legal title may have passed to Selected, subject to the Bank's mortgage but possession of the cars did not.

Selected also maintains that the Bank did not prove it had the right to the immediate possession of either automobile at the time of the alleged conversion by defendant. In this it is in error for under the terms of its mortgage from Bomar and Section 92, 46 O.S.1951, it had the right to immediate possession of the cars. We set out Section 92:

"No such mortgage or pledge shall be deemed to be fraudulent or void as to creditors of the mortgagor or pledgor because of any agreement between the parties thereto for the release from time to time of any of the goods from the lien thereof upon such terms as may be agreed upon, or permitting the mortgagor to sell the goods in the usual course of trade upon such terms and conditions as to the use and disposition of the proceeds of such sale as may be agreed upon; and the mortgagor in such event in case of any such sale shall promptly account and pay over to the mortgagee for application upon the debt secured all or such part of the proceeds of any such sale as may be required by such agreement to be paid to the mortgagee and shall be deemed and conclusively held to be the trustee of the funds received upon such sale to such extent for the benefit of the mortgagee."

We do not think that the Bank prejudiced its position by consenting to sales of the cars it "floor-planned" because it was done in compliance with the statutes herein discussed. We are also unable to see where the Bank misled Selected by its conduct in so far as permitting Bomar to assign conditional sales contracts. The Bank's mortgage was of record and Selected was aware of it and Bomar was required by law to account to the Bank for all money he received on the cars covered by the mortgage.

Selected simply was not a buyer in the ordinary course of trade.

Judgment is affirmed.

DAVISON, JOHNSON, WILLIAMS and CARLILE, JJ., concur.

BLACKBIRD and JACKSON, JJ., concur in result.

WELCH, C. J. and CORN, V. C. J., dissent.