[Civ. No. 11231. First Appellate District, Division One.—December 31, 1940.]

COMMERCIAL DISCOUNT COMPANY (a Corporation), Appellant, v. R. E. MEHNE, Respondent.

Robert G. Partridge, Wallace O'Connell and Leo M. Cook for Appellant.

Wyckoff, Gardner & Parker for Respondent.

KNIGHT, J.—The defendant placed an order with a retail automobile dealer for the purchase of a car, and paid him the full amount of the purchase price therefor. Approximately two weeks later a car different in color from but of the same model as the one ordered was delivered to defendant; and subsequently plaintiff, claiming right of ownership superior to the buyer by reason of a trust receipt, brought this action to recover the possession of the car so delivered. The complaint was in two counts, the first in claim and delivery, and the second to quiet title. The trial court found

in defendant's favor on all contested issues, and entered judgment accordingly, from which plaintiff appeals.

Resolving all conflicts in the testimony in support of the trial court's decision, the transactions which led to the bringing of the action were as follows: Carl Shumate was a retail dealer in Oldsmobile automobiles in Watsonville, doing business under the name of Shumate Motor Co. He was financed by plaintiff in the purchase of all automobiles from the manufacturer by the use of trust receipts. Upon the delivery of the cars to Shumate he placed them in his stockroom or warehouse, about two blocks distant from his salesroom, and left them there until they were needed for sale or there was room for them in his salesroom; and when sold to the trade he would send plaintiff a check for the amount he owed on the car sold. On July 12, 1937, defendant placed his order with said company for a 1937 model Oldsmobile 6 cylinder 2-door touring sedan, in cream color, to be delivered to him on September 15, 1937, at the factory in Michigan; it being his intention to take delivery there and drive it back home. At the time of placing the order he turned in a used car as part payment at an agreed valuation of $350, and on July 21, 1937, he gave Shumate a check for $585.41 to cover the full balance of the purchase price; and the check was cashed. On Tuesday, August 3d, defendant called at the motor company's place of business to inquire whether his car had been ordered, and he was informed by Harold McCoun, the sales manager, that Shumate had gone deer hunting the Friday before and had not returned. Shumate had in fact left town on the day stated, but he never did return, nor was he afterwards seen by any of the parties to this action. After being informed of Shumate's absence, defendant told McCoun, so defendant testified, that he was about to make reservations for his trip east, and wanted to be sure that the car had been ordered at the factory. After some discussion a phone call was made to the Oldsmobile plant in Oakland, and it was learned that the car had not been ordered; also that the factory had closed production on all 1937 models so that it was then too late to place the order. Defendant then stated to McCoun that he had paid for the car and he demanded delivery; whereupon a car identical with the one he had ordered, except it was maroon color, was taken out of the stockroom or warehouse by McCoun and other employees of the company, delivered to defendant and placed

in the Resetar garage, which was connected with the hotel in which defendant was employed; and the garage claim check was given to defendant. The factory shipping wrappings were still on the car, and it had not yet been serviced. A "dealer's report of sale", unsigned, was given to defendant, which was later signed by McCoun, and the car registered in defendant's name. Defendant gave his check for $150.04 representing the charge for freight to Watsonville in excess of the price of a car in Michigan. Later certain off-sets for personal obligations between Shumate and defendant were deducted from this amount and the balance of $56.90 delivered to the sheriff after a levy of attachment in another action not connected with the present one. On the day following the delivery of the car to defendant, Shumate not having returned, McCoun requested plaintiff by phone at its San Francisco office to take charge of the Shumate business, which it did within the next few days. As above indicated, there is a conflict in the testimony on several points, some of which relates to the conversation which took place on August 3, 1937, and some to the circumstances attending the delivery of the car to defendant; but under well settled rules all such conflicts on appeal must be resolved in favor of the trial court's decision; and therefore it would serve no useful purpose to enter into greater detail in setting forth the conflicting testimony.

The car in question was covered by a trust receipt held by plaintiff. It was executed on July 28, 1937, and among other things provided that Shumate, as trustee, held the car in trust for plaintiff for the purpose of sale or exchange, and that "the Trustee may . . . sell any or all of said motor vehicles for cash, or on terms approved in advance by Entruster for not less than the amounts due Entruster hereunder on the motor vehicle or motor vehicles so sold . . . "

The trust receipts law provides: "Where the trustee, under the trust receipt transaction, has liberty of sale and sells to a buyer in the ordinary course of trade . . . such buyer takes free of the entruster's security interest in the goods so sold . . . No limitation placed by the entruster on the liberty of sale granted to the trustee shall affect a buyer in the ordinary course of trade, unless the limitation is actually known to the latter." (Sec. 3016.5, subds. (2) (a), (i) and (ii), Civ. Code.) The trial court in the present case found that Shumate's possession of the car was for the purpose of

enabling Shumate to sell the same; that plaintiff allowed Shumate to keep said automobile, and it was kept with the knowledge and consent of plaintiff in Shumate's "stock in trade". The court further found that defendant "acted in good faith and without actual knowledge of any interest of said plaintiff in said automobile or of any limitation on said Shumate's liberty of sale thereof and without knowledge of any facts which if pursued would have led him to the discovery of any interest of said plaintiff therein"; and as conclusions of law the court held that defendant purchased and Shumate sold the automobile referred to in the complaint "in the ordinary course of trade" and that defendant was the owner thereof.

It is plaintiff's contention that the evidence "conclusively demonstrates" that defendant was not a "buyer in the ordinary course of trade" as defined in the trust receipts law. With this contention we cannot agree. The trust receipts law defines a "buyer in the ordinary course of trade" as "a person to whom goods are sold and delivered for new value and who acts in good faith and without actual knowledge of any limitation on the trustee's liberty of sale, including one who takes by conditional sale or under a pre-existing mercantile contract with the trustee to buy goods delivered, or like goods, for cash or on credit" (sec. 3013, subd. (1), Civ. Code) and while there may be circumstances from which it can be argued that defendant did not act in good faith and without actual knowledge of plaintiff's interest in the car, the trial court found to the contrary, and defendant's testimony alone is legally sufficient to sustain such finding.

Plaintiff further contends that defendant was not "a person to whom goods are sold and delivered *for new value*", and therefore was not a "buyer in the ordinary course of trade". (Emphasis added.) The trust receipts law defines "new value" as follows: " 'New value' includes new advances or loans made, or new obligation incurred, or the release or surrender of a valid and existing security interest, or the release of a claim to proceeds under section 3016.6; but 'new value' shall not be construed to include extension or renewals of existing obligations of the trustee, nor obligations substituted for such existing obligations." (Sec. 3013, subd. 7, Civ. Code.) The argument advanced by plaintiff in furtherance of its contention is that the automobile

in question was sold and delivered for the pre-existing debt of Shumate; that therefore the transaction was within the exclusion "extension or renewals of pre-existing obligations of the trustee"; furthermore, that the sale did not take place, or title pass, if it did pass, until defendant took possession of the car, and at that time no new value passed, and it is at the time of the sale that the purchaser must advance new value; that the $56.90 paid for freight did not approximate the full or fair value of the article purchased, and should not be treated as new value. On the other hand, defendant's position is that taking goods in satisfaction of a pre-existing claim is "new value" within the meaning of said act, because, while the section defining "new value" excludes "extension or renewals of existing obligations", it does not specifically exclude a situation where goods are taken in satisfaction of a pre-existing claim; and that this exact situation does come within the definition of "value" as set out in section 3013, subdivision 15, of said code: "'Value' means any consideration sufficient to support a simple contract. An antecedent or pre-existing claim, whether for money or not . . . constitutes value where goods . . . are taken . . . in satisfaction thereof . . . " Defendant's position is in our opinion not only sound but is fully supported by the law as laid down in the case of *Colonial Finance Co. v. DeBenigno,* 125 Conn. 626 [7 Atl. (2d) 841], which appears to have been cited on numerous occasions in connection with the Uniform Trust Receipts Law.

Furthermore, and in any event, the act in its definition of a "buyer in the ordinary course of trade" expressly includes "one who takes . . . under a pre-existing mercantile contract with the trustee to buy goods delivered, or like goods, for cash or on credit"; and clearly defendant's status came squarely within this express provision and therefore he was a buyer in the ordinary course of trade within the meaning of said act, because of his pre-existing mercantile contract with the trustee, Shumate, to buy goods delivered or like goods. The contract between Shumate and defendant was for the purchase of an automobile, and it was contemplated by both parties that the purchaser would receive an automobile for the price paid; and it must also have been within the contemplation of the parties that if the exact car ordered could not be obtained, the purchaser would receive another or a similar car; and in fact the only difference

in the automobile which defendant took and the one he ordered delivered to him at the factory was the color; therefore it must be considered "like goods". Plaintiff argues that the mere presence of a prior contract cannot expiate bad faith or lack of new value at the time title is purportedly transferred; in other words, that the elements of good faith and new value remain the basic tests of the buyer's protection. But there is nothing in the act to justify such a construction; nor upon the facts found can it be held as a matter of law that the trial court was in error in concluding that the defendant was a buyer in the ordinary course of trade.

 Nor is the situation altered by the fact that the car which was delivered to defendant was taken from the stockroom or warehouse rather than from the salesroom, for as provided in section 3016.5 (2) (c), "If the entruster consents to the placing of goods subject to a trust receipt transaction in the trustee's stock in trade or in his sales or exhibition rooms, or allows such goods to be so placed or kept, such consent or allowance shall have like effect as granting the trustee liberty of sale." The remaining points urged by plaintiff do not possess sufficient merit to require special attention.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.