[Civ. No. 3067.   Fourth Dist.   May 24, 1943.]

THE PEOPLES FINANCE AND THRIFT COMPANY OF VISALIA (a Corporation), Respondent, v. R. J. BOWMAN et al., Defendants; MERCANTILE ACCEPTANCE CORPORATION OF CALIFORNIA (a Corporation), Appellant.

Laurence B. Myers, Robert G. Partridge and Wallace O'Connell for Appellant.

Bradley & Bradley for Respondent.

MARKS, J.—This is an appeal from a judgment in an action for declaratory relief. Plaintiff was awarded $450, with interest and costs, to be paid out of money deposited with the County Clerk of Tulare County. This money was the proceeds from a sale of a Plymouth coupé sold under stipulation.

We will refer to the Mercantile Acceptance Corporation of California as the defendant.

R. J. Bowman was an automobile dealer with his place

of business in Visalia, California. Plaintiff and defendant were corporations authorized to finance the purchase and sale of new and used automobiles by means of trust receipts.

Less than a year prior to the time of the transactions here involved, Bowman and each of the corporations filed with the Secretary of State written statements of intention to engage in trust receipt financing of automobiles.

Under date of December 14, 1940, Bowman gave defendant a trust receipt on a new 1941 Pontiac coupé and received $939.68. Bowman placed this coupé in his stock in Visalia where it remained until January 2, 1941, when it was sold to Victor L. Kimzey. Kimzey gave in full payment of the purchase price, a used Plymouth coupé, and the balance in cash. The certificate of registration (pink slip) of the Plymouth was endorsed in blank by Kimzey and, with the car, was delivered to Bowman. Bowman did not pay anything on his debt to defendant.

On the same day Bowman took the Plymouth to the office of plaintiff and secured an advance of $450 and executed a trust receipt therefor, with the Plymouth as security. He delivered to plaintiff the pink slip endorsed in blank by Kimzey and returned the Plymouth to his stock where it remained until January 10, 1941.

Defendant learned of the transaction and on that date took possession of all automobiles in Bowman's place of business, including the Plymouth, and plaintiff brought this action to have determined its rights in that automobile with the result already indicated.

The trust receipt executed by Bowman to defendant contained the following:

"The Trustee may, however, sell said motor vehicle for cash or on terms approved in advance in writing by Entruster, for not less than the amount due Entruster hereunder including insurance premiums and all other charges; provided, however, that upon such sale all moneys hereby secured shall become immediately due and payable, and all of the proceeds and considerations received in such sales shall be forthwith delivered to Entruster as security for payment of said moneys, and until so delivered shall be held by the Trustee separate from the funds of the Trustee and as security for such payment."

It is evident that had the two trust receipt transactions been entirely independent of each other, each would have

been regular and each finance company would have secured valid security for its loan to Bowman on the respective automobile described in its trust receipt under the Uniform Trust Receipts Law. (Secs. 3012, et seq., Civ. Code.)

■ Kimzey was a buyer in the ordinary course of the trade and obtained a good title to the Pontiac free from the lien of defendant. (Sec. 3013, subd. 1, Civ. Code; *Commercial Discount Co.* v. *Mehne,* 42 Cal.App.2d 220 [108 P.2d 735].)

■ Both finance companies were "entrusters" who gave "new value" and were "purchasers" as those terms are defined in section 3013 of the Civil Code. In the trust receipt on the Pontiac defendant had given Bowman liberty of sale.

■ While the contract specifically permitted Bowman to sell for cash or upon terms approved in writing by defendant, it also seems to have contemplated a transaction in which Bowman might accept a used car in part payment for the Pontiac in lieu of all cash, for otherwise the provision that "all the proceeds and considerations received in such sales shall be forthwith delivered to the entruster as security for the payment of said moneys" would be meaningless. The use of the words "considerations" and "security" would indicate the receipt of something besides money by the dealer as money easily would come within the definition of "proceeds."

■ Defendant confidently relies on the following provision of section 3016.6 of the Civil Code as sustaining its right to judgment here:

"Where, under the terms of the trust receipt transaction, the trustee has no liberty of sale or other disposition, or, having liberty of sale or other disposition, is to account to the entruster for the proceeds of any disposition of the goods, documents or instruments, the entruster shall be entitled, to the extent to which and as against all classes of persons as to whom his security interest was valid at the time of disposition by the trustee, as follows: . . .

"(c) To any other proceeds of the goods, documents or instruments which are identifiable, unless the provision for accounting has been waived by the entruster by words or conduct; and knowledge by the entruster of the existence of proceeds, without demand for accounting made within ten days from such knowledge, shall be deemed a waiver."

The rights of defendant here must turn on the definition of the words "account" and "accounting" as used in the foregoing section.

It is a general rule of construction of statutes that ordinarily they are to be construed according to the general and accepted definitions of the words used. However, there are many exceptions to this rule, one of which is that they must be construed so as to carry out the intent of the Legislature and to make the statutes workable where possible. (*Southern Pacific Co.* v. *Riverside,* 35 Cal.App.2d 380 [95 P.2d 688]; *Burger* v. *Hirni,* 50 Cal.App.2d 709 [123 P.2d 891].)

Ordinarily "account" means, "A detailed statement of the mutual demands in the nature of debt and credit between parties, arising out of contracts or some fiduciary relation." (Black's Law Dictionary, 3d ed.) Accounting usually is striking a balance between debits and credits showing a balance due, if any. To apply these meanings to the words used in the section might destroy its value to an entruster and defeat its purpose which would seem to be to continue the lien of the entruster and transfer it to any goods taken by the trustee in part payment of the purchase price of the goods described in the trust receipt. Sometimes it would be impossible to demand an accounting, as that term is generally understood, from a trustee who had received money on a sale and had disappeared (as appears in some reported cases) with the money.

At the early common law there was an action called "account" or "account render." While this form of action fell into disuse in England it was adopted in some of the states of the Union. It was used to compel one occupying a confidential relation to render over to the other that which was his due. (See *Field* v. *Brown,* 146 Ind. 293 [45 N.E. 464].) Possibly, growing out of this form of action the word "account" is occasionally given the meaning of rendering over or paying or delivering to a creditor that which is due from a debtor. Also the term "accounting" is sometimes used to mean the payment of the amount due. (*Pyatt* v. *Pyatt,* 46 N.J.Eq. 285 [18 A. 1048].)

If we give the words "account" and "accounting," as used in the section, these definitions, the meaning of the language used becomes clear. It is simply this: If the trustee is given liberty of sale and is required by the trust receipt to render

over to the trustee any money, goods or other thing of value received as consideration in the sale of the entrusted goods, the lien of the entruster passes to such goods as may be identified, if the entruster within ten days demands delivery of such goods.

In this case there was no proof of a demand by defendant for the delivery of the goods. Defendant took possession of the automobiles in the possession of Bowman, including the Plymouth. This taking should come within the meaning of the words used in the section, as, taking possession would constitute payment of the amount due, or at least a part of it. Under these circumstances it cannot be held that the lien of the entruster did not pass to and become fixed on the Plymouth coupé.

However, this does not settle the rights of the parties as there is an important rule of equity that must be considered. It is this: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (Sec. 3543, Civ. Code.)

This maxim has been applied by our courts in deciding cases involving trust receipts. (See, *Commercial Credit Co.* v. *Barney Motor Co.*, 10 Cal.2d 718 [76 P.2d 1181]; *National Funding Corporation of Calif.* v. *Stump*, 57 Cal.App.2d 29 [133 P.2d 855].)

In the instant case neither finance company had any actual knowledge or notice of the lien of the other on either automobile. As far as the evidence discloses both were acting in entire good faith in their dealings with Bowman. Each parted with money under the belief that it was obtaining a valid first lien on an automobile as security. Then, where do the equities lie under the maxim we have quoted?

Defendant permitted the Pontiac to be placed in the possession of Bowman with express authority to sell it for cash or upon such terms as it might approve in writing. The trust receipt at least contemplated that Bowman might sell it for a used car taken in part payment, with the balance paid in cash. This is exactly what Bowman did and defendant must have realized that if there was a used car "trade in" Bowman would be given the possession of it and the evidence of its ownership,—the "pink slip." Thus defendant should have realized that it was placing Bowman in a position to work a fraud if he proved unfaithful to the trust and confidence im-

posed in him. He might misappropriate the money he received and which he should have paid to defendant, or he might encumber the used car taken on the trade and misappropriate those funds. In the instant case he did both of those things. Defendant maintains that plaintiff, Bowman's innocent victim, should suffer the loss instead of itself, the party which made the fraud possible by its misplaced confidence in Bowman's integrity by placing in his hands the means to commit the fraud.

In *Phelps* v. *American Mortgage Co.*, 40 Cal.App.2d 361 [104 P.2d 880], it is said:

"It is to be noted that the Civil Code section used the word 'negligence.' It is appellants' theory that they are not chargeable with negligence, but only with misplaced confidence in a trusted agent, and that misplaced confidence is not negligence. It is urged that, under the cases, the doctrine that a person is estopped from claiming title when he has entrusted another with *indicia* of ownership only applies where it is shown that the owner of the property has been guilty of actual negligence. Appellants point out that the trial court did not find that they were guilty of actual negligence, but found, in effect, that they were guilty of misplaced confidence and that this constituted negligence. It is urged that this finding or conclusion cannot be supported.

"After reading the cases, and giving consideration to their *rationale,* we are convinced that, where an owner deposits his property with another and gives the depository such *indicia* of ownership that a reasonable man dealing with such agent is reasonably led to believe the agent is the owner of such property and parts with value in reliance thereon, the third person will be protected even though the true owner is guilty of no more than misplaced confidence. Such misplaced confidence must be held to be negligence within the meaning of the maxim above-referred to." (See also, *Bank of America* v. *National Funding Corp.*, 45 Cal.App.2d 320 [114 P.2d 149].)

In the instant case defendant certainly must be found to have misplaced its confidence in Bowman and that plaintiff suffered loss thereby. As misplaced confidence amounts to negligence under the facts here, we must hold that the case comes within the language of section 3543 of the Civil Code and that defendant and not plaintiff must suffer the loss caused by the action of Bowman.

To escape this conclusion defendant urges that plaintiff had knowledge of sufficient facts to put it upon its inquiry; that had it inquired it would have learned that the Plymouth was not free from lien. The facts urged to support this argument may be summarized as follows: Plaintiff started flooring used cars for Bowman in April or May, 1940. It did not have sufficient capital to floor new cars for Bowman, and knew he had flooring contracts for new cars elsewhere. It knew that the Plymouth had been taken in on a trade for a new car.

In *Commercial Credit Co.* v. *Barney Motor Co.*, *supra*, it is said:

"The decisions in this state do not warrant a holding that mere knowledge of the general practice of 'flooring' cars is sufficient to place on inquiry one about to part with value. On the contrary the cases herein cited support the conclusion that one in the position of the bank in this case who has parted with value without actual notice, or without knowledge of facts to put it on inquiry, is protected as against the claim of the entruster under a trust receipt."

Nor do we believe that the fact that the Plymouth was being traded in on a new car was sufficient to put plaintiff on its inquiry without proof of something to indicate to plaintiff that Bowman would not properly apply the money he received from plaintiff. Taking a used car in on trade for a new car is a common practice instead of the exception in the automobile business. Had Bowman properly applied the money he received from Kimzey and from plaintiff, the lien of defendant on the Pontiac would have been paid and this case would not have been brought. Plaintiff had been flooring cars for Bowman for about eight months and as far as the record shows those dealings had been satisfactory. It had no reason to suspect that Bowman would misapply the money it paid him, even assuming that knowledge of his flooring contracts with another should have caused suspicion in this case. Again we have the misplaced confidence of defendant in Bowman as the sole cause of the loss.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied June 22, 1943.