CANANDAIGUA NATIONAL BANK AND TRUST COMPANY, Plaintiff, *v.* COMMERCIAL CREDIT CORPORATION, Defendant.

Supreme Court, Trial Term, Ontario County, December 4, 1953.

*William G. Scott* for plaintiff.

*Martin H. Buecking* for defendant.

ROBERTS, J.  This action was tried before the court, a jury having been waived at the opening of the trial.

John Farrell, Jr., also known as John E. Farrell, doing business as Farrell Motors, was engaged in the retail sale of automobiles in the city of Canandaigua, New York.  Sport Car Sales, Inc., was a distributor for Austin automobiles.  On or about November 28, 1952, Sport Car Sales, Inc., sold an Austin automobile to the defendant, Commercial Credit Corporation, which in turn caused the automobile to be delivered to Farrell Motors, at which time Farrell Motors gave its note to the defendant and entered into a trust receipt with said defendant. This transaction was carried out pursuant to the Uniform Trust Receipts Law (Personal Property Law, art. 3-A) and the defendant became the entruster and Farrell Motors the trustee. Two statements of trust receipt financing were filed by the defendant with the Department of State, one on September 5, 1952, and one on December 15, 1952.

Immediately following this trust receipt financing and on December 3, 1952, John E. Farrell went to the plaintiff bank and conferred with its vice-president.  Mr. Farrell stated that he was going to acquire the Austin car from Farrell Motors because he wanted it for his personal use and also desired to loan it to different persons to use as a demonstrator to prove the economy of its operation and that he had to have title in his own name so that it could be used on the road without dealer's plates.  He stated that Farrell Motors owned the car free and clear and that he had cash with which he was making the down payment and asked if the bank would finance the balance of the purchase price.  After calling the County Clerk's Office and ascertaining that there were no liens against the car, the plaintiff agreed to finance the transaction.  Farrell thereupon executed a conditional sales contract between himself and Farrell Motors, reciting the cash sale price of the car as $2,295 and the down payment as $895.  This left a balance

of $1,400 together with an agreed credit service charge of $90.69, or a total of $1,490.69. Attached to the contract was a conditional sales note executed by Farrell, running to Farrell Motors, in the same amount. The conditional sales contract and the note were assigned by Farrell Motors to the plaintiff bank, for which assignment the bank paid $1,490.69 in cash and which it thereafter filed in the office of the county clerk.

The plaintiff bank had previously financed the retail sale of cars by Farrell Motors but had never been engaged in wholesale financing of any kind and had no knowledge that Farrell Motors did wholesale financing of its cars. The sales price of the automobile as stated in the conditional sales contract was in excess of the regular retail price of $1,845 but this was the first Austin car handled by Farrell Motors and the plaintiff bank and its officers had no knowledge of the retail price of Austin cars and assumed that the stated price was correct.

After the execution of the conditional sales contract Farrell never removed the automobile from the showroom of Farrell Motors and never had it licensed in his own name. The transaction between Farrell Motors and Farrell did not constitute a bona fide sale of the car and Farrell never became a buyer in the ordinary course of trade (Personal Property Law, § 51, subd. 1). However, when the plaintiff financed the transaction, it had no knowledge that this was not a bona fide sale and there were no facts sufficient to put it on notice. It acquired the conditional sales contract and note for value and in good faith and without knowledge of any limitation of the trustee's right to sell, and the same was acquired in the ordinary course of business conducted by the plaintiff bank.

Farrell Motors, the trustee, did not remit the proceeds received from the plaintiff bank to the defendant entruster pursuant to the terms of the trust receipt. When the defendant learned of the transaction, it took possession of the Austin car. The plaintiff thereupon brought the present action and replevied the car which was subsequently returned to the defendant upon the furnishing by it of a bond. The car was subsequently sold and the defendant holds the proceeds of sale subject to the rights of the parties to be determined in this action. The plaintiff and defendant are both innocent victims of the foregoing transaction and the question for determination is which of them shall stand the loss.

Subdivision 1 of section 58-a of the Personal Property Law provides in part as follows: "1. Purchasers of negotiable documents or instruments. (a). Nothing in this article shall

limit the rights of purchasers in good faith and for value from the trustee of negotiable instruments or negotiable documents, and purchasers taking from the trustee for value, in good faith, and by transfer in the customary manner instruments in such form as are by common practice purchased and sold as if negotiable, shall hold such instruments free of the entruster's interest; and filing under this article shall not be deemed to constitute notice of the entruster's interest to purchasers in good faith and for value of such documents or instruments, other than transferees in bulk.'' Paragraph (b) of the same subdivision expressly includes as such purchasers in good faith and for value, those who acquire documents or instruments which have been received by the trustee in substitution for the goods originally entrusted. Under this section the plaintiff was a purchaser in good faith and for value from the trustee. It is entitled to the protection afforded provided that in acquiring the note and conditional sales contract it became (1) a purchaser of negotiable instruments; (2) a purchaser of negotiable documents; or (3) a purchaser taking *"by transfer in the customary manner instruments in such form as are by common practice purchased and sold as if negotiable"*. (Italics supplied.)

In *General Motors Acceptance Corp.* v. *Associates Discount Corp.* (38 N. Y. S. 2d 972, revd. on other grounds 267 App. Div. 1032), the lower court held that a conditional sales contract and note did not come within subdivision 1 of section 58-a because they were not a negotiable instrument and were not in such form as by common practice are purchased and sold as if negotiable. The court pointed out that the conditional sales contract there being considered contained provisions that the seller would assign the same to a named assignee and that the purchaser agreed to perform all of the promises to such assignee. Obviously such a contract would not ordinarily be negotiable except as to the assignee named therein. No similar provisions limiting assignability are contained in the contract now under consideration. It also appeared in the case cited that the purchaser of the conditional sales contract and note was not an innocent purchaser in good faith because it had actual knowledge that the dealer was financing his cars under a wholesale plan commonly referred to as floor planning, which is accomplished by the use of trust receipts. The facts clearly distinguish this case from the one now under consideration.

In *North American Acceptance Corp.* v. *Northern Illinois Corp.* (347 Ill. App. 89), the court in construing the same sec-

tion of the Uniform Trust Receipts Law, held that the purchaser of a conditional sales contract and note from the trustee in good faith and for value, came within the section and acquired title to the car free from the interest of the entruster. Judgment in favor of the entruster was, however, affirmed due to the absence of any proof that the purchaser advanced any money or parted with any value in acquiring the note and contract.

In *Farmers Nat. Bank of Amsterdam* v. *Universal Credit Co.* (259 App. Div. 955, motion for reargument and motion for leave to appeal denied 260 App. Div. 816, motion for leave to appeal denied 284 N. Y. 818), title to a car was transferred to the wife of the president of the dealer under circumstances very similar to those in the present case. The transferee of the car financed the transaction by executing and delivering to a bank a chattel mortgage and note. The bank prevailed as against the entruster. In *Citizens Nat. Bank of Springville* v. *Conger* (176 Misc. 1048, 1050), the court in referring to subdivision 1 of section 58-a and the *Amsterdam* case, said: "It seems to be the law of this State that a purchaser in good faith for value of a chattel mortgage, regular on its face, and accepted in what appears to be the ordinary course of trade or the customary manner, takes title free from the entruster's interest, even though the mortgage and the mortgagor's evidence of title were created in a fraudulent scheme."

In *B. C. S. Corp.* v. *Colonial Discount Co.* (169 Misc. 711), the entruster prevailed because the purchaser of the note and chattel mortgage had actual knowledge when it acquired the same that the automobile had been floor planned under a wholesale financing arrangement and hence was not a purchaser in good faith and for value pursuant to subdivision 1 of section 58-a.

It has also been held in a case not involving trust receipts that a bank which purchased a conditional sales contract and note from an automobile dealer became a purchaser in the ordinary course of business within the meaning of section 69 of the Personal Property Law. (*First Nat. Bank of Binghamton* v. *Hermann Co.*, 275 App. Div. 415.)

It is the common practice for banks and finance companies to finance the retail sale of automobiles by taking assignments from the dealer of conditional sales contracts and notes. This was the practice of the plaintiff in the present case. Such contracts and notes in the form here used are purchased and sold as if negotiable, and the plaintiff acquired the same in the customary manner and in the ordinary course of business in

good faith and for value, and it comes within the protection of subdivision 1 of section 58-a of the Personal Property Law, and holds its title free from the entruster's interest.

The conclusion reached is in accord with the decisions prior to the adoption of the Uniform Trust Receipts Law, holding that the purchaser of a conditional sales contract and note from the trustee, took title free from any rights of the entruster on the theory of an estoppel (*Tharp* v. *San Joaquin Valley Securities Co.*, 20 Cal. App. 2d 20; *Commercial Credit Co.* v. *Barney Motor Co.*, 10 Cal. 2d 718). Such conclusion also seems most likely to carry out the intent and purpose of section 58-j of the Personal Property Law, which requires the statute to be so interpreted as to effectuate its general purpose and to make uniform the law of the States which enacted it.

The court finds that the plaintiff has been damaged in the sum of $1,490.69 with interest thereon at 6% from December 3, 1952.

Let judgment be entered in favor of the plaintiff in said sum of $1,490.69 with interest thereon at 6% from December 3, 1952, together with costs.