PATROSSO, J.
 

 This controversy involves the title to a 1949 Oldsmobile. Car Leasing of America, Inc. (hereafter referred to as “CLA” or “trustee”), a used car dealer, with whose nefarious machinations this court has had occasion to become quite familiar, being desirous of acquiring the car in question from its then owner, secured the necessary financing from the defendant for the purchase thereof. This took the form of a trust receipt transaction, whereby defendant took title to the vehicle by endorsement to it of the certificate of ownership, and entrusted possession thereof to CLA under the terms of a trust receipt, which provided that CLA was authorized to sell the same “for cash or on terms approved in writing in advance by the entruster for not less than the amount due to entruster ($1440.00).” The car was then placed in CLA's sales lot for sale, where it remained until the events hereinafter referred to.
 

 On December 15, 1951, CLA, acting through its sales manager, Mr. Coker, sold or purported to sell the vehicle to one Harris, a bookkeeper or accountant for CLA. To this end CLA, acting through Coker, executed a conditional sales con
 
 *Supp. 837
 
 tract with Harris, whereby the latter agreed to purchase the car for $2,440.94, payable in monthly installments, and which contract recited that the purchaser had made a cash down payment of $700. Thereupon Coker and Harris called at the plaintiff bank, where Harris made an application for and was granted a loan in the amount of $1,532.88, being the unpaid balance due under the conditional sales contract, less the time price differential or financing charge of $138.06. It may be noted here that the application for credit which Harris made to the bank did not disclose the fact that he was an employee of CLA, and it likewise appears, although unknown to the bank, that, contrary to the recital in the contract, Harris had paid nothing on account of the purchase price. The bank thereupon issued its cashier’s check for $1,532.88 to CLA, and the latter assigned the conditional sales contract to the bank. By the terms of the assignment, CLA guaranteed the “due and punctual payment of all sums due or to become due under the” contract, and warranted that the title to the automobile was in it; that it had the right to make the assignment, and that the vehicle was free from encumbrance. Needless to say, CLA did not pay defendant any part of the amount due it under the trust receipt. After the sale to Harris the car was upon CLA’s lot, but the evidence is conflicting as to whether it thereafter continued to be offered for sale or whether its presence upon the lot was due solely to the fact that Harris parked it there during the day. At a later date and while the car was upon the lot, as a result of some process, the nature of which does not appear, a marshal was placed in charge, following which defendant obtained possession of the automobile, which precipitated this action by plaintiff to recover the same or its value; the purchaser, Harris, in the meantime having defaulted under the terms of his contract.
 

 Defendant challenges the court’s finding that plaintiff is the owner of the vehicle upon two grounds: (1) that both the purchaser and the plaintiff bank had notice of defendant’s security interest and hence took subject thereto; and (2) whether the bank did or did not possess such knowledge, as Harris was not a bona fide purchaser of the automobile, under the doctrine announced in
 
 California Standard Fin. Corp.
 
 v.
 
 Riverside Fin. Co.
 
 (1931), 111 Cal.App. 151, 160 [295 P. 555], plaintiff’s rights to the vehicle are no greater than his.
 

 At the outset, we observe that the problem here presented
 
 *Supp. 838
 
 is to be resolved by the provisions of the Uniform Trust Receipts Act, adopted in California in 1935, and now sections 3012 to 3016.16, inclusive, of our Civil Code. We emphasize this because of the fact that our research has revealed decisions both within and without this state, involving trust receipt transactions wherein the courts have overlooked or ignored and in some instances misconceived the provisions of this enactment. Nor is this surprising, for the statute is far from a model of perspicuity and its nebulous language, unless carefully read and analyzed, is readily susceptible to erroneous inferences. For example, in
 
 People’s Finance & Thrift Co.
 
 v.
 
 Bowman
 
 (1943), 58 Cal.App.2d 729 [137 P.2d 729], where the controversy was between an entruster of a Pontiac automobile (defendant), which had been sold by the trustee, and the plaintiff who was an entruster under a trust receipt covering a Plymouth, which had been received by the trustee in part payment for the Pontiac, the court, while reaching the correct result, quoted and seemingly erroneously assumed that the case was governed by section 3016.6, which defines the rights of an entruster as against third persons with respect to the proceeds of goods, instruments and documents
 
 in the possession of or owing to the trustee.
 
 And the discussion in this case occasioned the Supreme Court in Indiana to make the same erroneous assumption in a case involving the right to conditional sales contracts covering automobiles entrusted by the plaintiff as between it and an assignee of such contracts who purchased the same from the trustee.
 
 (Universal Credit Co.
 
 v.
 
 Citizens State Bank
 
 (1945), 224 Ind. 1 [64 N.E.2d 28, 168 A.L.R. 352].)
 

 We find it unnecessary to consider defendant’s contention that Harris was not a bona fide purchaser in good faith, for, if it were conceded that he was not, this would not compel the conclusion that the judgment in favor of the plaintiff bank is erroneous. For reasons which will hereafter appear,the case of
 
 California Standard Fin. Corp.
 
 v.
 
 Riverside Fin. Co., supra,
 
 relied upon by defendant in support of its contention to the contrary, is not applicable. That case did not involve a trust receipt transaction, and at the time of its decision (1931), the Uniform Trust Receipts Act had not been adopted in California.
 

 We turn our attention then to defendant’s contention that the evidence compels the conclusion that the plaintiff bank had knowledge, at the time it acquired the conditional
 
 *Supp. 839
 
 sales contract from CLA, of defendant’s security interest. The basis for this contention is that, prior to the time of the transaction here, Mr. Holland, the bank’s officer who handled it, know that some of CLA’s cars were “floored” with defendant; and that, apparently, for the purpose of ascertaining the reliability of CLA, Mr. Holland made inquiry of defendant as to its experience with that concern and was informed that in its dealings with CLA for about a year defendant had had no trouble. There is no evidence in the record, however, that when the bank acquired the contract covering the automobile in question, it had any knowledge of defendant’s interest therein, and Mr. Holland’s testimony is to the effect that he did not. Mere knowledge by the bank that defendant had “floored” ears with CLA was not sufficient to put it upon inquiry as to the title of the automobile.
 
 (Commercial Credit Co.
 
 v.
 
 Barney Motor Co.
 
 (1938), 10 Cal. 2d 718, 721 [76 P.2d 1181];
 
 People’s Finance & Thrift Co.
 
 v.
 
 Bowman
 
 (1943), 58 Cal.App.2d 729, 737 [137 P.2d 729].) Therefore, the evidence was such as to warrant the trial court in concluding, as it seemingly did, that the plaintiff bank was without notice of defendant’s interest in the automobile.
 

 Thus we are brought to the decisive question: What are the respective rights, under a trust receipt, of an entruster of an automobile and a bank which, without notice of the entruster’s interest, finances the purchase thereof by a third party from the trustee and in connection with which it takes an assignment of the conditional sales contract from the latter?
 

 By the terms of Civil Code, section 3016.3, it is provided that an entruster who has filed as required by the act—as did the defendant here—preserves “his security interest in documents or goods against all persons” except as provided in sections 3016.4, 3016.5, 3016.6, 3016.7, 3016.10 and 3016.11. The case here, if within any of the exceptions to the general rule conferring priority upon the entruster, must fall within that set forth in section 3016.5 (the counterpart of section 9 of the Uniform Trust Receipts Act, 9A ULA pp. 303-305) which insofar as material here reads as follows:
 

 “ (1)
 
 [Purchasers from trustee of negotiable documents or
 
 instruments.] (a) Nothing in this chapter shall limit the rights of purchasers in good faith and for value from the trustee of negotiable instruments or negotiable documents, and purchasers taking from the trustee for value, in good faith, and by transfer in the customary manner instruments
 
 *Supp. 840
 
 in such form as are by common practice purchased and sold as if negotiable, shall hold such instruments free of the entruster’s interest; and filing under this chapter shall not be deemed to constitute notice of the entruster’s interest to purchasers in good faith and for value of such documents or instruments, other than transferees in bulk.
 

 “(b) The entrusting (directly, by agent, or through the intervention of a third person) of goods, documents or instruments by an entruster to a trustee, under a trust receipt transaction or a transaction falling within section 3015 of this chapter [shall] be equivalent to the like entrusting of any documents or instruments which the trustee may procure in substitution, or which represent the same goods or instruments or the proceeds thereof, and which the trustee negotiates to a purchaser in good faith and for value.”
 

 Thus, under “a,” purchasers “taking from the trustee for value, in good faith, and by transfer in the customary manner instruments in such form as are by common practice purchased and sold as if negotiable, shall hold such instruments free of the entruster’s interest,” and under subdivision (b), although the original subject of the entrustment was “goods” rather than “instruments” or “documents,” the entrustment shall be deemed to encompass “any documents or instruments which the trustee may procure in substitution, or which represent the same
 
 goods
 
 ... or the proceeds thereof, and which the trustee negotiates to a purchaser in good faith and for value.”
 

 Here it is clear that the conditional sales contract between OLA and Harris was procured by the trustee in substitution for or represents the same
 
 goods
 
 (the Oldsmobile) or the proceeds thereof, and it remains to determine (1) whether plaintiff was a “purchaser” for value of the contract, and (2) if it was an instrument in such form as by common practice is purchased and sold as if negotiable.
 

 As to the first question, Civil Code, section 3013, subdivision 10, defining “purchase,” reads as follows: “ ‘Purchase ’ means taking by sale, conditional sale, lease, mortgage or pledge, legal or equitable,” and subdivision 11 of the same section defines “purchaser” as “any person taking by purchase,” while subdivision 15 thereof defines “value” as “any consideration sufficient to support a simple contract.” Here the evidence is without dispute that the bank purchased the contract from the trustee (CLA) in consideration of the payment to the latter of $1,532.88, and hence it is clear that the bank clearly answers the definition of a purchaser for value.
 

 
 *Supp. 841
 
 Passing to the second, does a conditional sales contract of an automobile wherein the seller is a dealer in automobiles come within the statutory description of an instrument in such form as by common practice purchased and sold as if negotiable? We are of the view that it does. The practice of banks and finance companies of financing the retail sales of new and used automobiles in the manner followed here, and whereby the financing institution acquires by purchase from the dealer the conditional sales contract, is so general as to constitute a matter of general knowledge of which this court may take judicial notice, and, as a consequence, it is equally apparent that such contracts “are by common practice purchased and sold as if negotiable.”
 
 (Canandaigua Nat. B. & T. Co.
 
 v.
 
 Commercial Credit Corp.
 
 (Superior Ct., 1953), 204 Misc. 946 [126 N.Y.S.2d 316], distinguishing
 
 General Motors Accept. Corp.
 
 v.
 
 Associates Discount Corp.
 
 (Mun.Ct. 1942), [38 N.Y.S. 972], reversed on other grounds 267 App.Div. 1032 [48 N.Y.S.2d 242], and
 
 B.C.S. Corp.
 
 v.
 
 Colonial Discount Co.
 
 (City Ct. 1938), 169 Misc. 711 [8 N.Y.S.2d 65].)
 

 In the Canandaigua Nat. B. & T. Co. case, last cited, which factually is strikingly similar to the case at bar, the court, at page 319 [126 N.Y.S.2d], says:
 

 “Paragraph (b) of the same subdivision [N.Y. Personal Property Law, § 58-a, subd. 1, the counterpart of section 9 of the Uniform Trust Receipts Act and of Civil Code section 3016.5 quoted
 
 su,pra)
 
 expressly includes as such purchasers in good faith and for value, those who acquire documents or instruments which have been received by the trustee in substitution for the goods originally entrusted. Under this section the plaintiff was a purchaser in good faith and for value from the trustee. It is entitled to the protection afforded provided that in acquiring the note and conditional sales contract it became (1) a purchaser of negotiable instruments; (2) a purchaser of negotiable documents; (3) a purchaser taking
 
 ‘by transfer in the customary manner instruments in such form as are by common practice purchased and sold as if negotiable.’
 
 (Italics supplied.)”
 

 And continuing, the court, at page 320, says:
 

 “It is the common practice for banks and finance companies to finance the retail sale of automobiles by taking assignments from the dealer of conditional sales contracts and notes. This was the practice of the plaintiff in the present case. Such contracts and notes in the form here used are purchased and
 
 *Supp. 842
 
 sold as if negotiable, and the plaintiff acquired the same in the customary manner and in the ordinary course of business in good faith and for value, and it comes within the protection of Personal Property Law, § 58-a, subd. 1, and holds its title free from the entruster’s interest.
 

 “The conclusion reached is in accord with the decisions prior to the adoption of the Uniform Trust Receipts Law, holding that the purchaser of a conditional sales contract and note from the trustee, took title free from any rights of the entruster on the theory of an estoppel.
 
 (Tharp
 
 v.
 
 San Joaquin Valley Securities Co.,
 
 20 Cal.App.2d 20 [66 P.2d 230] ;
 
 Commercial Credit Co.
 
 v.
 
 Barney Motor Co.,
 
 10 Cal.2d 718 [76 P.2d 1181].) Such conclusion also seems most likely to carry out the intent and purpose of Personal Property Law, section 58-j, which requires the statute to be so interpreted as to effectuate its general purpose and to make uniform the law of the states which enacted it.”
 

 To the same effect is
 
 North American Acceptance Corp.
 
 v.
 
 Northern Illinois Corp.
 
 (1952), 347 Ill.App. 89 [106 N.E.2d 197], There, however, judgment in favor of the entruster was affirmed because of the absence of proof that the purchaser of the conditional sales contract from the trustee parted with any value in acquiring the same.
 

 In
 
 Security First Nat. Bank
 
 v.
 
 Taylor
 
 (1954), 123 Cal. App.2d 414 [266 P.2d 414], which involved a controversy between an entruster of automobiles and the bank which financed the purchase thereof and secured an assignment of the conditional sales contracts from CLA as here, the court reached the same ultimate conclusion as we have in this case, although no reference is made in the opinion to Civil Code section 3016.5, and the court seemingly considered .the bank as a purchaser of the
 
 automobiles.
 
 However, in the course of its opinion, in discussing
 
 General Motors Accept. Corp.
 
 v.
 
 Associates Discount Corp.,
 
 38 N.Y.S.2d 972,
 
 supra,
 
 the court makes this statement (p. 422): “It is thus seen that the G.M.A.C. case holds merely to the general law: The holder of such a contract of conditional sale which is not negotiable is an assignee thereof who stands in the shoes of the assignor; he takes only such rights as the assignor had and is subject to the same defenses as he.”
 

 In so stating, however, it is apparent that the court did not have in mind Civil Code, section 3016.5, subdivision (1) (a) and (b), which, as we have seen, is applicable here, and hence was seemingly unaware that its provisions are not restricted to
 
 *Supp. 843
 
 negotiable instruments but comprehend as well such as
 
 " are by common practice purchased and sold as if negotiable
 
 It is also evident that the court’s attention was not called to
 
 Canandaigua Nat. B. & T. Co.
 
 v.
 
 Commercial Credit Corp.,
 
 126 N.Y.S.2d 316,
 
 supra,
 
 which effectively overrules what was said in
 
 General Motors Acceptance Corp
 
 v.
 
 Associates Discount Corp.
 
 to the effect that such conditional sales contracts do not answer this description.
 

 Insofar as the opinion of this court in
 
 People
 
 v.
 
 Taylor,
 
 Cr.A. 2983, undertakes to declare that the rights of a bank financing the purchase of an automobile in the manner herein described, and which in connection therewith, without notice of the entruster’s interest therein, for value acquires the contract of conditional sale, are subordinate to the rights of the entruster if the purchaser of the automobile is not a “buyer in the ordinary course of trade” as defined in Civil Code section 3013, subdivision 1, it is erroneous and is disapproved.
 

 There being sufficient evidence to warrant the conclusion that the plaintiff bank was without notice of the entruster’s interest, and it being undisputed that it parted with value in acquiring the conditional sales contract covering the automobile in question, the trial court correctly determined that the plaintiff’s rights were superior to those of the defendant, and the judgment is accordingly affirmed.
 

 Stevens, J., concurred.
 

 Shaw, P. J., concurred in the judgment.