**UNION BANK & TRUST COMPANY,**
**Appellant,**

v.

**SERVICE TRUST COMPANY, Appellee.**

**No. 3926.**

Court of Civil Appeals of Texas.

Eastland.

Dec. 18, 1964.

Rehearing Denied Jan. 15, 1965.

W. R. Smith, San Antonio, for appellant.

James N. Castleberry, Jr., Bradford F. Miller, San Antonio, for appellee.

WALTER, Justice.

Service Trust Company filed suit against Richard H. Day and Union Bank and Trust Company. The suit against Day was on a note executed by him for $4,036.00, payable to Service and for foreclosure of a chattel mortgage lien on a 1961 New Moon three bedroom mobile home. Union Bank and Trust Company was also claiming a lien against the mobile home. Service Trust Company's suit against Union Bank and Trust Company was to determine which lien was superior. Service pleaded:

"That at the time the aforesaid lien of Plaintiff was created on the aforesaid chattel, to-wit; One 1961 New Moon 3 Brm. Mobile Home, Serial No. 55X1301870, the said chattel was, under and by virtue of the provisions of the Texas Certificate of Title Act, Article 1436–1, Vernon's Annotated Penal Code of the State of Texas, a motor vehicle subject to a 'first sale', and Section 41 of said Article 1436–1 provides:

" 'No lien shall be valid on any motor vehicle which is hereafter the subject of a first sale, or be enforceable against any such motor vehicle unless there is noted on the importer's or manufactur-

er's certificate the date, name, and address of the mortgagees whose rights arise out of or are incident to such first sale by reason of the execution of any written instrument by the transferee.'

That at the time the aforesaid lien of Plaintiff was created on said chattel, the title of the Defendant Richard H. Day to the said chattel was evidenced by a Manufacturer's Certificate of Origin, as required by the said Texas Certificate of Title Act, and the said Manufacturer's Certificate of Origin contained no notation thereon of any outstanding lien whatsoever in favor of the Defendant Union Bank and Trust Company, or any other person; that at such time, Plaintiff had no actual or constructive notice of any lien of any kind in favor of, or claimed by, the Defendant Union Bank and Trust Company, or any other person."

Union claims a lien on the same mobile home under the provisions of Article 5499a–51, Vernon's Ann.Tex.Civ.St., known as Texas Uniform Trust Receipts Act.

In a non-jury trial the court held that Service Trust Company's lien was superior to that of Union. The mobile home was sold at a judicial sale for $3,142.40. The court ordered his clerk to pay the proceeds of the sale to Service to be applied on Day's debt to it. Union has appealed. It contends the court erred in holding that the chattel mortgage lien held by Service under the Texas Certificate of Title Act was superior to the lien held by Union under the Texas Uniform Trust Receipts Act. Service has a cross point that the court erred in holding that Union was engaged in interstate commerce.

Richard H. Day operated a business known as Day's 77 Mobile Home Sales in San Benito, Texas buying and selling new and used mobile homes.

On December 19, 1960, Union wrote a letter to Day concerning an agreement of floor plan financing with trust receipts on mobile homes. The letter is signed by a Vice-President of Union. The following appears after his signature:

"DEALER'S ACCEPTANCE

I (we) hereby accept the terms of the within Agreement.

Day's 77 Mobile Home Sales
──────────────────────────
Dealer

By: Richard H. Day
──────────────────

Dated: 12/27/1960."

Service objected to the introduction of the letter because it had not been shown that Day signed it. The letter was received in evidence for a limited purpose "—in order to show the sequence of the events, and negotiations and not as to the authenticity or to the matters set forth therein."

There appears in the record a "Statement of Trust Receipt Financing" dated December 27, 1960, signed by Union and Day which was filed in the Office of the Secretary of the State of Texas on January 3, 1961. The filing of this statement was in compliance with subdivision 2 of section 13 of Article 5499a–51, known as the Uniform Trust Receipts Act. This Statement of Trust Receipt Financing was executed pursuant to the letter agreement of Union and Day.

On July 20, 1961, Day purchased a mobile home from New Moon Homes. The manufacturer's statement or certificate of origin to the mobile home dated July 20, 1961, designates its serial number as 55X-1301870. Such instrument transferred the title to Day. " 'Document' means any documents of title to goods." Section 1 Article 5499a–51, V.A.C.S. We are of the opinion that the manufacturer's certificate of origin is a document within the meaning of the Act. The record shows that the mobile home was shipped on July 20, 1961, C.O.D. Title to the home therefore passed to Day on the date it was shipped. 50 Tex.Jur.2d page 521. This home was delivered to Day at his place of business on July 28, 1961. When it was delivered Day paid the full purchase price of $4,462.00 with his personal check drawn on a San Benito bank. Thereafter, on July 29, 1961 Day executed to

Union a Bill of Sale and Trust Receipt which described two New Moon Homes. The manufacturer's serial number, to the one here involved, in the Trust Receipt was given as 1301870. On the same date Day executed to Union his note for $9,183.00. On December 11, 1961 Union filed a new statement of trust receipt financing as required by section 13 of the Trust Act. On December 26, 1961 Day executed a renewal note to Union for an unpaid balance of $7,430.00.

The court made the following findings of fact which are supported by evidence:

"14. At the time Day applied to Union for the $9,183.00 loan, the mobile home which is the subject of this lawsuit, was already owned by Day, was physically present on his lot, and was a part of his existing business inventory displayed for sale.

"15. There was no agreement or obligation of any kind between Day and Union by, or under, which Day was bound to apply or allocate any of the loan proceeds received from Union to pay any particular account or indebtedness or any part thereof.

"16. On August 3, 1961, Day received from Union proceeds from the $9,183.00 loan, and deposited the same in his general business account in the San Benito Bank and Trust Company, San Benito, Texas.

"17. Day could have, and did, use the proceeds of the loan from Union to pay his general business debts and expenses, living expenses, and for any other purpose he desired.

"18. The acquisition of the mobile home which is the subject of this lawsuit by Day from New Moon Homes, Inc., on July 20, 1961, was not dependent upon, nor was it a part of, the transaction between Day and Union occurring between July 29, 1961, and August 3, 1961, as a result of which Union loaned Day $9,183.00 and Day and Union signed a Trust Receipt covering the mobile home. These two transactions were two wholly independent and different transactions."

On January 3, 1962, Day borrowed $4,-036.00 from Service. Day executed a note for such amount and a chattel mortgage in favor of Service on the mobile home here in dispute describing it by serial number 55X1301870. On such date a manufacturer's certificate of origin to said vehicle was delivered to Service and it noted its lien thereon as required by the Certificate of Title Act, Article 1436–1 of Vernon's Annotated Penal Code. At such time no other lien was listed on the certificate.

The trial court's judgment is supported by section 2 of the Trust Receipts Act and by In Re Chappell, D.C., 77 F.Supp. 573.

The court held that the manufacturer's certificate of origin was a negotiable document within the meaning of the Trust Act. Union's point that the court erred in so holding cannot be sustained. Southwestern Investment Company v. The American National Bank of Amarillo, Tex.Civ.App., 374 S.W.2d 318, (Writ Ref. N.R.E.) is the only reported Texas case construing the Trust Act. The Investment Company was claiming liens on fifteen used automobiles under the Trust Act. The Bank was claiming liens on the same cars under the Certificate of Title Act. One Nichols entered into a Trust Receipt Financing Agreement with the Investment Company. The Investment Company filed its statement of Trust Receipt Financing with the Secretary of State as required by the Act. Thereafter, Nichols borrowed money from the Bank for the purported purchase of the fifteen cars. Nichols delivered to the Bank clear Certificate of Titles. Thereafter, the Investment Company discovered that Nichols had sold some of the cars "out of trust." The Investment Company contended there was a conflict between the two acts and that the Trust Act superseded the Certificate of Title Act because it was enacted subsequent to the Title Act. It also contended its lien was prior and superior. In deciding there was no conflict the court said:

"Contrary to appellant's contention, we do not think the Certificate of Title Act

and the Trust Receipts Act are in conflict. In the first instance, the Certificate of Title Act is a specific act dealing only with motor vehicles and house trailers, while the Trust Receipts Act deals with 'any chattels personal other than: money, things in action, or things so affixed to land as to become a part thereof.' The Certificate of Title Act recognizes the existence of 'trust receipt liens' in Section 3 of the Act although undoubtedly it is making reference to the trust receipt known at common law. We therefore conclude the two acts are not in conflict and must be read together, and each given effect according to the facts and circumstances of the particular case. Both acts serve useful, unique purposes in present day commercial transactions."

The court further held that the Certificates of Title were negotiable documents within the meaning of the Trust Act:

"The Texas Trust Receipts Act has not been previously interpreted by the Texas Courts. We must therefore look to other jurisdictions which have adopted similar acts. An excellent analysis of the material provisions which are identical with the sections under consideration here was made by the California court in Citizens Nat. Trust & Savings Bank of Los Angeles v. Beverly Finance Co. [127 Cal.App.2d Supp. 835, 273 P.2d 714], (Supra). The only material difference in that case and the case at bar is that the bank there purchased for value a conditional sales contract from the trustee as security for money loaned on the automobile rather than taking the certificate of title as security. The court held the bank was a purchaser in good faith and the instrument so purchased was in such form as by common practice was purchased and sold as if negotiable. The court concluded the rights of the bank were superior to those of the finance company, an entruster under the California Trust Receipts Act. See also

General Credit Corp. v. First National Bank of Cody, 74 Wyo. 1, 283 P.2d 1009; and Dart National Bank v. Mid-States Corp., 356 Mich. 574, 97 N.W.2d 98. As stated above, the only material distinction between this case and the case at bar are the types of instruments involved. In view of the language of identical trust receipts act provisions, we do not think this distinction is of any consequence as both instruments are of such a nature as to come within the exception of Section 9, subd. 1(a) and (b) of the Act."

Union contends that even though a Certificate of Title is a negotiable document it does not necessarily follow that a manufacturer's certificate of origin is a negotiable document. It is true that the Supreme Court held in Motor Inv. Company v. Knox City, 141 Tex. 53, 174 S.W.2d 482 "Reading the Act as a whole, we think it clear that every transfer of a motor vehicle, regardless of the number thereof, from manufacturer to dealer, dealer to dealer, and from dealer to 'owner,' as defined in the Act, constitutes a 'first sale,' and that it is not necessary that the vehicle be registered and a certificate of title thereto obtained as a condition precedent to the validity of such 'first sale.' "

The Knox City case is not in point on the issues involved in the instant case. Section 9, subd. 1 of the Trust Act provides in part as follows:

"Limitations on Entruster's Protection Against Purchasers.

"Sec. 9 1. Purchasers of Negotiable Documents or Instruments.

"(a) Nothing in this Act shall limit the rights of purchasers in good faith and for value from the trustee of negotiable instruments or negotiable documents, and purchasers taking from the trustee for value, in good faith, and by transfer in the customary manner instruments in such form as are by common practice purchased and sold as if

negotiable, shall hold such instruments free of the entruster's interest; and filing under this Act shall not be deemed to constitute notice of the entruster's interest to purchasers in good faith and for value of such documents or instruments, other than transferees in bulk.

"(b) The entrusting (directly, by agent, or through the intervention of a third person) of goods, documents or instruments by an entruster to a trustee, under a trust receipt transaction or a transaction falling within Section 3 of this Act, shall be equivalent to the like entrusting of any documents or instruments which the trustee may procure in substitution, or which represent the same goods or instruments or the proceeds thereof, and which the trustee negotiates to a purchaser in good faith and for value."

" 'Purchaser' means any person taking by purchase. A pledgee, mortgagee or other claimant of a security interest created by contract is, insofar as concerns his specific security, a purchaser and not a creditor." Sec. 1 of Trust Receipts Act.

In Citizens National Trust & Savings Bank of Los Angeles v. Beverly Finance Company, 127 Cal.App.2d Supp. 835, 273 P.2d 714, the court quoted with approval from Canandaigua Nat. Bank & Trust Co. v. Commercial Credit Corp., 204 Misc. 946, 126 N.Y.S.2d 316 as follows:

"It is the common practice for banks and finance companies to finance the retail sale of automobiles by taking assignments from the dealer of conditional sales contracts and notes. This was the practice of the plaintiff in the present case. Such contracts and notes in the form here used are purchased and sold as if negotiable, and the plaintiff acquired the same in the customary manner and in the ordinary course of business in good faith and for value, and it comes within the protection of Personal Property Law, § 58–a, Subd.

1, and holds its title free from entruster's interest."

 "The Trust Receipts Act places emphasis on the accepted practice of negotiability rather than technical appearances of negotiability." Southwestern Investment Company v. The American National Bank of Amarillo, 374 S.W.2d 318, (Writ Ref. N.R.E.). The manufacturer's certificate was transferred to Service as if negotiated in the customary manner. Under the Trust Act, Service was a purchaser in good faith for value of a negotiable document. Service is therefore entitled to hold it free of Union's security interest under Section 9 to the Trust Act.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.